No. 21, 487.

F. L. STEVENS, *Appellant*, v. T. M. KEEGAN, *Appellee*,

No. 21,516.

F. L. STEVENS, *Appellant*, v. J. C. MULRYAN, *Appellee*.

No. 21,517.

F. L. STEVENS, *Appellant*, v. CHARLES BLOCKER, *Appellee*.

#### SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*"Holder in Due Course"—Evidence—Set-off and Counterclaim.* No defense, counterclaim or set-off can reduce the amount of the judgment that should be rendered on a negotiable promissory note in the hands of one who took it from one who claimed to hold it in due course, where the defense of want of good faith in acquiring the note by such holder is set up against the note, and the special findings of the jury show that the defense has not been established by the evidence.

2. SAME—*Assignment—When Subject to Equities and Defenses.* One who acquires a negotiable promissory note, by an assignment written on a separate piece of paper, from one who is not a holder in due course, takes the note subject to all equities and defenses in favor of the maker.

Appeals from Marshall district court; FRED R. SMITH, judge. Opinion filed May 11, 1918. Reversed.

*Walter T. Griffin*, of Marysville, *Ira K. Wells*, of Seneca, *A. A. Godard, J. Arthur Myers*, both of Topeka, and *Guy S. Calkins*, of Iowa City, Iowa, for the appellants.

*W. W. Redmond*, of Marysville, and *W. J. Gregg*, of Frankfort, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: In this action the plaintiff seeks to recover $289, the amount alleged to be due on a negotiable promissory note. He recovered judgment for $13.92, and appeals. The note was given by the defendant to the Lyon-Taylor Company, of Iowa City, Iowa, for a piano, a watch, and some silverware, to be distributed as prizes in a scheme for advertising and promoting sales in the business of the defendant, who was a hardware merchant at Axtell, Kan. M. F. Price, of Iowa City, under the trade names of the Lyon-Taylor Company, the Puritan Manufacturing Company, and the Franklin Price Company, conducted three separate kinds of business. The one under the name of the Lyon-Taylor Company was that of increasing sales by country merchants through contests, a scheme of advertising planned and sold by the company; the one under the name of the Puritan Manufacturing Company was that of selling jewelry; while the one under the name of the Franklin Price Company was that of selling perfumery. The defendant signed an order for a piano, a watch, and some silverware, and for the advertising matter and instructions that went therewith, and put on contests for the piano, the watch, and the silverware. These were to be distributed as premiums to candidates receiving the highest number of votes. The contract contained the following provision:

"INCREASED SALES GUARANTEED—Sales preceding twelve months were $...... Next twelve months are hereby guaranteed to be $31,200, and if .092 percent of said sales does not amount to $289.00 we hereby agree to pay to purchaser the deficiency in cash. We also agree to send our bond in the sum of $1.000.00 to cover this agreement."

The contract had printed thereon the following:

"The attached note is tendered in settlement of this order and the company is authorized to detach same when the order is accepted."

Under the contract, the goods described were to be shipped by the Lyon-Taylor Company to the defendant f.o.b. transportation company. The Lyon-Taylor Company did not ship some of the goods promptly, and those goods were not in the hands of the defendant when they were to be delivered to the contestants as prizes.

The note sued on was attached to the contract at the time it

was signed, but was detached before it was transferred. A copy
of the note attached to the petition was indorsed, "Lyon-Taylor
Company, by M. H. Taylor." The answer contained a general
denial, an allegation that the plaintiff was not the owner of the
note in good faith, and that if he ever did purchase the note,
it was after the maturity thereof, with notice of the defenses
and equities of the defendant. The answer further alleged the
failure of the Lyon-Taylor Company to perform its part of
the contract, set up a counterclaim of $175.55, alleged damages
in the sum of $100; prayed judgment for $271.55, and tendered
into court $117.45. The amount tendered into court was 92
hundredths of 1 percent of the gross sales made by the defend-
ant for the period agreed to under the contract. The answer
was verified. The jury returned a verdict for $13.92 in favor
of the plaintiff, and answered certain special questions as
follows:

"4. Did the First National Bank of Iowa City, Iowa, acquire the note
in suit as collateral security on or about the 9th day of August, 1913?
Answer. Yes.

"5. Was the First National Bank of Iowa City, Iowa, at the time it
took the note in suit, guilty of bad faith in so doing? Answer. Yes.

"6. If you answer the above question in the affirmative, then state
the particular facts constituting such bad faith. Answer. On account
of suits pending on similar notes.

"7. Did the First National Bank of Iowa City, Iowa, have notice of
any defect in the note in suit at the time it acquired the same? Answer.
Yes.

"8. If you answer the above question in the affirmative, then state the
particular facts of which it had notice. Answer. By past experience
on similar notes."

There was evidence which tended to show that the Puritan
Manufacturing Company transferred the note to the First
National Bank of Iowa City, as collateral, to secure the pay-
ment of the notes of that company aggregating $8,000; that
about a month before these notes became due the bank notified
the company that payment of the notes would be expected at
maturity; that M. F. Price, or Mr. Taylor, a representative of
Price, went to the plaintiff and induced him to go to the bank
and purchase the notes of the Puritan Manufacturing Com-
pany and take the collateral then held by the bank to secure
the payment of the notes as security in the hands of the plain-

tiff; that an arrangement was then made between Price or Taylor and the plaintiff by which if any of the notes taken as collateral were unpaid at maturity, such notes should be turned over for collection to an attorney to be named by Price, and the plaintiff should not be at any loss or expense on account of such collection. The note sued on was among those held by the bank as collateral, and was, by the bank, turned over to the plaintiff.

1. The plaintiff requested a peremptory instruction for judgment in his favor, moved for judgment on the special findings of the jury, and filed a motion for a new trial in which he alleged "that the general verdict and the answers to the special questions are contrary to the evidence." The request for instructions and the motions were denied, and error is assigned thereon.

The note was past due when the plaintiff became the owner of it, and he was not the holder thereof in due course; but he claims to have derived his title from a holder in due course, and that, therefore, he held the note free from any defenses in favor of the defendant. Section 6585 of the General Statutes of 1915 provides that "a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter."

Section 6579 of the General Statutes of 1915 reads:

"A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

What was there to show that the First National Bank of Iowa City was not a holder in due course? This question is answered by the special findings of the jury. Those findings were not sufficient to establish that fact. Neither the fact that suits on other notes of like character given by other persons, nor the fact that the bank had previously had like experience on similar notes, was sufficient to establish that the

Stevens v. Keegan.

bank was guilty of bad faith in taking the note sued on, or that it was not the holder thereof in due course. When the note was delivered to the bank, it was indorsed in blank by the payee thereof. The note was then payable to bearer, and was negotiable by delivery. (Gen. Stat. 1915, § 6561.) The burden was on the defendant to prove that the bank was not the holder of the note in good faith. (*Mann v. National Bank,* 34 Kan. 746, 10 Pac. 150; *Savings Association v. Barber,* 35 Kan. 488, 11 Pac. 330; *Gafford v. Hall,* 39 Kan. 166, 17 Pac. 851; *National Bank v. Elliott,* 46 Kan. 32, 34, 26 Pac. 487; *Brook v. Teague,* 52 Kan. 119, 125, 34 Pac. 347; *Clark v. Skeen,* 61 Kan. 526, 532, 60 Pac. 327; Gen. Stat. 1915, § 6586.)

Under the findings of the jury, the judgment on the note could not be reduced by any matter set up in defense.

2. To sustain the judgment, the defendant argues that the evidence did not prove the indorsement of the note by the Lyon-Taylor Company, but did prove that the first National Bank of Iowa City acquired the note from the Puritan Manufacturing Company by assignment on a separate sheet of paper. The indorsement of the note by the Lyon-Taylor Company was established by abundant evidence. The defendant's contention concerning the transfer of the note by the Puritan Manufacturing Company by assignment is based on the following testimony:

"Q. Now, how did you know whether you were getting any title to that Lyon-Taylor paper at that time if you did not know who composed the firm? A. Because it was indorsed by the Lyon-Taylor Company and subsequently indorsed by the Puritan Manufacturing Company and the Puritan Manufacturing Company guaranteed to us the genuineness of the previous indorsement.

"Q. Do you want to be understood as testifying that the notes in suit in these cases are indorsed by the Puritan Manufacturing Company? A. They should be indorsed by the Puritan Manufacturing Company; if not, the assignment was made in separate assignments; in any event the genuineness of the paper would be guaranteed to us by the Puritan Manufacturing Company."

The note was not indorsed by the Puritan Manufacturing Company. There was, then, some evidence to show that the bank obtained the note by assignment from that company. The Puritan Manufacturing Company was not the holder of the note in due course. The name was one of the trade names

under which M. F. Price did business, and he had notice of all defenses and equities in favor of the defendant. If the bank obtained the note by assignment, without reference to the indorsement of the Lyon-Taylor Company, it took the note subject to the equities and defenses of the defendant. (*M'Crum v. Corby*, 11 Kan. 464; *Hadden v. Rodkey*, 17 Kan. 429; *Hatch v. Barrett*, 34 Kan. 223, 8 Pac. 129; *Briggs v. Latham*, 36 Kan. 205, 13 Pac. 129; *Offenstein v. Weygandt*, 89 Kan. 739, 132 Pac. 991.)

In *Farnsworth v. Burdick*, 94 Kan. 749, 147 Pac. 863, it was held that the holder of a note by assignment written on the back thereof is a holder in due course. But that case does not overrule previous decisions of this court where the assignment is made in writing and is not attached to the note. The plaintiff took the note from the bank subject to the equities and defenses of the defendant.

Other matters are urged by the plaintiff, but there is no substantial merit in any of them, and none of them is of sufficient importance to justify discussion.

The judgment is reversed, and a new trial is ordered. The same order is made in cases numbered 21,516 and 21,517.