No. 24,379.

THE COMMERCE TRUST COMPANY, *Appellee*, v. THE GUARANTEE TITLE & TRUST COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. COUPON BOND — *Secured by Mortgage — Bond of Negotiable Instrument.* A coupon bond secured by mortgage contained the following stipulation: "If any interest coupon or any part thereof is not paid when due or in case of failure to comply with any of the requirements of the mortgage given by the maker hereof to secure the payment of this bond the principal and accrued interest shall become due and payable at once at the option of the legal holder of this bond." *Held,* the language did not render the instrument nonnegotiable within the meaning of the negotiable instruments law.

2. SAME—*Indorsement on Coupon Bond—No Notice to Transferee of any Defect in Title.* An indorsement on a coupon bond as follows: "For value received, —— hereby assign and transfer the within bond together with all —— interest in and all —— rights under the mortgage securing the same to —— without recourse," an indorsement on the coupons as follows: "Pay to the order of —— without recourse," and an acknowledged assignment in blank of the mortgage, do not charge the person to whom it is transferred with notice of defect in the title of the one by whom it is transferred.

Appeal from Sedgwick district court, division No. 1; THOMAS E. ELCOCK, judge. Opinion filed April 7, 1923. Affirmed.

*C. H. Brooks, Willard Brooks,* and *Howard T. Fleeson,* all of Wichita, for the appellant.

*Benjamin F. Hegler,* of Wichita, *William C. Michaels,* and *Charles W. German,* both of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: This action was commenced as one in replevin to recover possession of interest coupons which had been detached from notes secured by real-estate mortgages. By agreement the

action was changed into one to recover for the conversion of the coupons, and by stipulation the judgment in this action determines the ownership of the remaining coupons and of the notes to which they are attached. Judgment was rendered in favor of the plaintiff, and the defendant appeals.

In its brief, the defendant says, "The facts of the case are completely contained, so far as this appeal is concerned, in the lower court's finding of facts." The findings of fact and conclusions of law were as follows:

"1. The court finds generally for the plaintiff upon the issues in the case, subject to the particular findings hereinafter set out.

"2. The court finds that the interest coupons, copies of which are attached to plaintiff's second amended petition marked exhibits 'A,' 'B,' and 'C,' were attached to and formed parts respectively of the principal notes of even date therewith copies of which are attached to defendant's answer as exhibits 'A,' 'B,' and 'C,' representing in each case six months' interest on the principal note; that mortgages were given securing said notes of which copies are attached to defendant's amendment to its answer this day filed as exhibits 'D,' 'E,' and 'F,' and that all said copies including the indorsements and writings thereon are true and exact copies of the originals.

"3. The court finds that each of the said mortgages contained covenants among others by the mortgagor to pay when due all taxes levied on the premises and insurance premiums, to keep all buildings in as good repair as at the date of the mortgage, to procure and maintain policies of fire insurance and to warrant the title of the mortgaged premises; that each of the said principal notes contained language as follows: 'And if any interest coupon or any part thereof is not paid when due, or in case of failure to comply with any of the requirements of the mortgage given by the maker hereof to secure the payment of this bond, the principal and accrued interest shall become due and payable at once at the option of the legal holder of this bond.'

"4. The court finds that on September 24, 1917, one Frank Wood, with whom defendant had theretofore had business acquaintance in connection with his business of inspecting for the New York Life Insurance Company, loans, many of which had been, from time to time, offered for sale to said company by defendant, sent to defendant from Chicago a telegram as follows: 'Have private investor in market for approximately six thousand dollars farm loans five and a half per cent if you have something suitable completed, you may make all assignments in blank forward completed papers including abstract and examiner's report to Chicago office my care will deliver and remit or return papers promptly.' On September 25, 1917, defendant answered Wood as follows: 'Your telegram received. We ship loans tonight.' On September 26, 1917, defendant accordingly shipped by registered mail to Wood a number of loans for him to select from for use in the proposed deal, including the above-mentioned mortgages, notes, coupons, and abstracts of title, the loans not selected to be returned to defendant. In fact,

Trust Co. v. Trust Co.

the telegram of September 24, 1917, was false to the knowledge of said Wood in that he had no private investor in the market for the farm loans mentioned, nor for any farm loans, and the alleged private investor was purely imaginary. The defendant, as Wood intended it should do, believed the said false statements in said telegram of September 24, 1917, and relied upon same in shipping the said documents, and would not have shipped the said documents if it had not so relied upon and believed said false statements. When • so mailed to Wood the notes, coupons and mortgages contained endorsements and assignments as shown upon the copies attached to the pleadings. With or on the mortgages themselves were assignments executed and acknowledged but with the name of the assignee left blank. Defendant gave Wood no other instructions nor authority except as embodied in said telegrams and letters. On September 29, 1917, and October 1, 1917, said Wood in violation of his instructions from the defendant pledged the documents above mentioned to secure a personal pre-existing debt to plaintiff, said plaintiff at the time of such pledges having no knowledge of any defect in the title of Wood to said documents. At the time of said pledges the various indorsements and assignments aforesaid and blanks therein were in the exact form as indicated by the pleadings.

"5. After September 26, 1917, until October 3, 1918, said Wood kept the defendant satisfied and peaceably disposed by numerous letters containing details of imaginary negotiations with said imaginary investor who was having protracted and unexpected difficulties in raising the necessary money. In a letter of April 25, 1918, for the first time, Wood mentioned another imaginary investor who might take the loans if the original negotiations fell through, to whom the record does not show that the Guarantee Title & Trust Company made any objection. The said imaginary delays were still impeding Wood's pretended deal on the dates the coupons involved in this suit became due. On or about the said dates, the plaintiff, at such time still having in its possession the several principal notes and mortgages securing same with other documents as aforesaid, which it had received from the said Frank Wood, detached the said coupons, and under date of October 3, 1918, mailed same to defendant for collection. The defendant thereupon became aware for the first time that Frank Wood had delivered the said documents as aforesaid and defendant thereupon repudiated the acts of the said Frank Wood and claimed title to the said coupons on the theory that it was still the owner of all the documents in question and the property rights and choses in action represented thereby.

"6. The court further finds that defendant became the original owner of the said principal notes and all the coupons thereto attached, including the coupons heretofore referred to, upon execution by the makers thereof, and it ever since has been and would still be the owner thereof except for the facts hereinbefore set forth, of the placing of said documents in the hands of said Wood, and his pledge or hypothecation of the same with plaintiff and the legal effect thereof, by reason whereof the court makes its conclusion of law hereinafter set out that the plaintiff became and is the holder in due course of the said principal notes and coupons.

"CONCLUSIONS OF LAW.

"1. The court concludes that the plaintiff is a holder in due course of the said promissory notes and coupons within the meaning of section 6579, Kansas Statutes of 1915.

"2. That the bonds and coupons involved in the controversy are all negotiable instruments within the meaning of the negotiable-instruments law.

"3. That the endorsements on the bonds and coupons in controversy are blank endorsements within the meaning of the negotiable-instruments law of Kansas.

"4. That the plaintiff is entitled to recover the amount prayed for in its petition."

1. The defendant contends that the "notes and coupons in question are not negotiable instruments." To support this contention, it is argued that "the notes and mortgages must be read together as one contract, so that the notes, if the facts so require, are impaired as to negotiability by provisions in the mortgages"; that "the penalty of acceleration of due date, imposed in case of default in performance of any act, is in effect a contract to perform the act"; that "the acceleration provisions in the notes in the case at bar render the notes uncertain in time, and constitute contracts to do other things besides the payment of money, all within the prohibitions of the negotiable-instruments law"; and that "the 'increased interest' provisions in the mortgages render the notes in question nonnegotiable because uncertain in amount."

This contention is based on the following provision of the notes:

"If any interest coupon or any part thereof is not paid when due or in case of failure to comply with any of the requirements of the mortgage given by the maker hereof to secure the payment of this bond the principal and accrued interest shall become due and payable at once at the option of the legal holder of this bond."

In *Clark v. Skeen*, 61 Kan. 526, 60 Pac. 327, this court said:

"A note for the payment of a certain sum at a fixed date is not rendered nonnegotiable by a stipulation that upon default in the payment of interest the whole amount shall become due at the option of the holder and then draw a greater rate of interest." (Syl. ¶ 2.)

The note in controversy in that action contained the following language:

"At the option of the legal holder, after any of said interest notes remain due and unpaid ten days, the whole of the principal and interest may be declared immediately due and payable." (p. 527.)

In 1917, the legislature amended section 6532 of the negotiable-instruments law by making that law read as follows:

"An instrument which contains an order or promise to do any act in addition to the payment of money is not negotiable. But the negotiable character of an instrument otherwise negotiable is not affected by . . . provisions or agreements in concurrent writings or mortgages given to secure payment of such instruments, but nothing in this section shall validate any provision or stipulation otherwise illegal." (Ch. 244.)

The notes in controversy do not contain any promise to do anything but pay money.' The mortgages contain promises to do other things, but the notes do not. The notes recite, that in case of failure to comply with any of the requirements of the mortgages, the notes shall become due and payable at once at the option of their legal holders; but that is not a promise contained in the note to perform any act stipulated in the mortgage. In all other particulars, the notes in controversy are the same as the note in *Clark v. Skeen,* 61 Kan. 526, 60 Pac. 327, so far as the legal principles governing their negotiability are concerned. The court holds that the several notes in controversy are negotiable under the negotiable instruments law of this state.

2. Another contention is that "the notes in question were not indorsed and delivered in such manner and under such circumstances as would protect a purchaser against the true owner, even though the instruments were negotiable." To support this contention, the defendant argues that "the notes, mortgages, and indorsements thereon were never validly 'delivered' by the Guarantee Title & Trust Company"; that "the indorsements were not complete contracts, as to which, under any theory, there could be a conclusive presumption of delivery"; that "considering only the indorsement on the coupons, 'Pay to the order of ———' without reference to certain additional indications hereafter mentioned"; that "considering also certain additional evidences of intent which appear in the transaction"; and that "the incomplete assignments of the mortgages constituted notice to the bank that the transaction passing title to Wood was incomplete, including the supposed coincident passage of title to the notes."

The issue in this case is not between those liable on the notes in controversy and the holder of those notes; the issue is between parties, each claiming to be the owner of the notes.

Each of the mortgage notes was indorsed as follows:

"For value received ——— hereby assign and transfer the within bond together with all ——— interest in and all ——— rights under the mortgage securing the same to ——— without recourse.     GUARANTEE TITLE & TRUST CO.

By LOCK DAVIDSON, *Treas.*"

The coupon attached to the notes were indorsed as follows:

"Pay to the order of ——— without recourse.

THE GUARANTEE TITLE & TRUST CO.,
By LOCK DAVIDSON, *Treasurer.*"

Two of the mortgages had written on each of them the following acknowledged assignment:

"For value received, the Guarantee Title and Trust Company hereby assigns the within mortgage and the debt secured thereby to ——— May 11th, 1917.        THE GUARANTEE TITLE AND TRUST COMPANY.
By LOCK DAVIDSON, *Treasurer.*"

There was a separate acknowledged assignment for the other mortgage.

There was nothing in the language of the indorsements on the notes or coupons or in the assignments of the mortgages that would give a prospective purchaser any notice of any defect whatever in the title of the holder. The indorsements on the notes were blank indorsements within the meaning of section 6561 of the General Statutes of 1915. The material part of that section reads:

"An indorsement in blank specifies no indorsee, and an instrument so indorsed is payable to bearer, and may be negotiated by delivery."

The indorsements on the notes were commercial indorsements, and transferred the notes free from any defect in the title of the payee. (*Farnsworth v. Burdick,* 94 Kan. 749, 147 Pac. 863; *Farnsworth v. Burdick,* 95 Kan. 642, 149 Pac. 396; *Stevens v. Keegan,* 103 Kan. 79, 84; 172 Pac. 1025; *Plow Co. v. Losey,* 104 Kan. 400, 402, 179 Pac. 358.)

In *Birket v. Elward,* 68 Kan. 295, 74 Pac. 1100, this court held that—

"An indorsee of a negotiable note taken as collateral security for a preëxisting debt, there being no extension of time of payment or other new consideration except such as may be deemed to arise from the acceptance of the paper, is a holder for value and in due course of business, and in the absence of any circumstances charging him with notice is protected against a claim of payment made to the original payee." (Syl.) (See, also, *Bank v. Vaughn,* 96 Kan. 402, 406, 151 Pac. 1118.)

The judgment is affirmed.