No. 26,390.

THE HOME STATE BANK, *Appellant*, v. T. B. PORTER, JR., *Appellee*.

SYLLABUS BY THE COURT.

BILLS AND NOTES—*Holder in Due Course—Special Findings.* In an action on a promissory note alleged to have been transferred before maturity wherein the defense was that plaintiff was not a good-faith owner and holder of the note, and that it had not been negotiated and transferred to him at such a time and in such a way as to constitute him a holder in due course, the ·special findings of the jury are examined and held not responsive, full, fair or consistent with the general verdict.

Appeal from Stevens district court; CHARLES E. VANCE, judge. Opinion filed April 10, 1926. Reversed.

*G. W. Sawyer* and *John C. King,* both of Liberal, for the appellant.

*W. E. Eddy,* of Hugoton, and *F. S. Macy,* of Bartlesville, Okla., for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The Home State Bank of Tipton, Kan., sued T. B. Porter, Jr., on a promissory note executed by him on April 16, 1918, for $1,250, made payable to himself, six months after date, with interest at six per cent per annum. The note was indorsed by Porter and plaintiff alleged that it was assigned and delivered to plaintiff in due course of business before maturity for a valuable

Appeal and Error, 4 C. J. pp. 1198 n. 21, 1202 n. 47. Bills and Notes, 8 C. J. pp. 752 n. 75, 981 n. 22, 1084 n. 16. Trial, 38 Cyc. pp. 1925 n. 67, 1928 n. 85.

consideration. The trial resulted in a judgment in favor of defendant, from which plaintiff appeals.

By way of defense defendant denied that the note had been sold and transferred in due course and before maturity, as plaintiff had alleged. There was a further allegation by defendant that he purchased fifty shares of stock in the Great American Insurance Company through a general agent of that company on condition that a $10,000 insurance policy in the company should be issued to him with the first premium, $383, fully paid. He also stated that he made application for this insurance and submitted to an examination by a physician, which was approved, but that the insurance company had never executed or delivered the policy to him as had been agreed upon. Defendant alleged that he relied on the representation that a policy would be issued, and that by this promise he was induced to purchase the stock and execute the note in question, and would not have given the note under any other circumstances. In his testimony defendant stated that the agent of the insurance company promised that the policy would be issued as pleaded, that it was never delivered to him, and that he had never had the benefit of the annual premium of $383, which was a part of the consideration. It was conceded that the note was executed by the defendant and indorsed and delivered by him to the insurance company, that there was nothing on its face indicating a collateral agreement as to an insurance policy, but the certificate of the stock purchased by defendant was attached to the note as security for its payment. Plaintiff's testimony was to the effect that it purchased the note with the collateral attached from the insurance company on April 19, 1918, a few days after it was executed, and that it paid the full face value of the same; that payment was made with a certificate of deposit which was transmitted to the insurance company and indorsed by it, and that it passed through the Federal Reserve Bank of Kansas City, and also the National Bank of Commerce of that city; and the canceled certificate of deposit, marked paid, and with the indorsements showing its transmission through the banks named, was introduced in evidence. In behalf of the plaintiff it was further shown that just before the maturity of the note a notice was sent by plaintiff to the defendant, but no response was made by him and no payment has ever been made on it.

In relation to the ownership of the note defendant testified that he was asked by the insurance company to pay it, and that about a

year after it was executed he went to Hutchinson with a view of making a settlement with the insurance company about the unissued policy and the note, and at that time the note was in the possession of the insurance company, and further, that at a later time he called at the general offices of the insurance company and saw that the note was still in its possession. In explanation of the possession of the insurance company there was testimony that when the note matured and was not paid, and the plaintiff, who resided at a great distance from the home of the defendant and could not get in touch with him, sent the note to the insurance company for collection, and that that company made efforts to obtain payment from defendant, but being unable to do so returned the note to plaintiff. The cashier of plaintiff testified that the insurance company to which the note was sent for collection only held it a short time, that the plaintiff had owned the note ever since its purchase, and when the insurance company did not succeed in collecting it, the plaintiff had it sent back, and shortly afterwards this action was brought. On the testimony the following findings were made:

"Q. Is plaintiff the owner of the note sued on? A. No.

"Q. When did the plaintiff acquire the note in question? If you find it acquired it twice, give both dates? A. Don't know.

"Q. How much did plaintiff pay therefor? A. Don't know.

"Q. Did the bank at the time it acquired the note have any notice of any defense on the part of the defendant? A. No.

"Q. If it did, where and when did it get such notice? A. Don't know.

"Q. From whom did it get such notice? A. Don't know.

"Q. What was the nature of such notice? A. Don't know."

As will be seen the findings acquit the plaintiff of any notice of defenses that defendant had by reason of representations or promises made when the note was executed. The jury did make an express finding that plaintiff was not the owner of the note sued on. The plaintiff was in possession of the note and produced it at the trial. It was negotiable in form and was an unconditional promise to pay a definite sum. The plaintiff was a holder as the possession showed, and every holder is deemed *prima facie* to be a holder in due course. (R. S. 52-509.) When it was produced by plaintiff it devolved on the defendant to prove that plaintiff's title was defective. There was testimony of the defendant that the insurance company had possession of the note after it became due and also that that company did not mention any transfer of it to the defendant when it sought to collect it, but that in urging payment it spoke of and dealt with

the paper as if the insurance company was still the owner. This testimony tended in a slight degree to show ownership in the insurance company and furnishes a little support for the finding that the plaintiff was not the owner of the note. There was definite proof, however, that the insurance company had the paper only for collection. The answers of the jury respecting the ownership were not responsive and candid. When asked when the plaintiff acquired the note, the answer was, "Don't know." There was abundant proof of a definite character as to the sale and transfer of the note which fixed definitely the time it was sold and acquired by the plaintiff. To the question, "How much did the plaintiff pay therefor?" the jury answered, "Don't know." The testimony was clear and full to the effect that par was paid, and the entry showing the passage of the certificate of deposit, the medium of payment through the banks, furnished clear written proof of payment. That testimony was not contradicted, and yet the jury answered, "Don't know." In the finding that the plaintiff did not have notice of any defense when the note was purchased, the jury really found that it had acquired it by finding that plaintiff had no notice of infirmities or defenses when the note was acquired by it. The note itself disclosed no collateral promises nor anything showing that an insurance policy was involved in the transaction. The defendant obtained the fifty shares of stock when the note was executed, and recognized his ownership long afterwards when he asked the insurance company to sell his stock to another, and offered to pay a commission for such a sale. If the promise was made respecting the insurance policy which was not carried out, it would at most only work a partial failure of consideration, which is a defense *pro tanto*, but as we have seen, the jury found that the plaintiff had no notice of any defense. The findings disclose that the case was not fairly tried. For some reason the jury professed ignorance of plain and undisputed evidence, put before them on issues that are quite material. While the testimony that plaintiff was not the owner of the note is weak and unsatisfactory, we cannot say that it is immaterial, otherwise judgment for plaintiff would be directed. Our conclusion is that the verdict should have been set aside and the motion of plaintiff for a new trial should have been granted. The judgment is reversed and the case is remanded for a new trial.

HOPKINS, J., not sitting.