[Civ. No. 5193.   First Appellate District, Division One.—October 22, 1926.]

## E. J. SILBERSCHMIDT, Respondent, v. THOMAS MORAN, Appellant.

[1] NEGOTIABLE INSTRUMENTS — CERTIFICATES OF DEPOSIT — INDORSEMENT—CONSIDERATION.—Where the owner of certificates of deposit indorsed them over to a real estate agent upon an agreement that the agent would apply them to the purchase of real property on account of the owner, such undertaking was a sufficient consideration for the indorsement.

[2] ID.—VALUABLE CONSIDERATION—PRE-EXISTING DEBT.—Where a real estate agent, holding certificates of deposit left with him and indorsed by the owner to be used in the purchase of real property,

---

2.   See 19 **Cal. Jur.** 857; 3 **R. C. L.** 1057.

in turn indorsed them over to a third party in part payment of a claim for money deposited with the agent by the third party, such indorsement was based upon a valuable consideration within the meaning of section 3106 of the Civil Code.

[3] ID.—GOOD FAITH—CONFLICTING EVIDENCE—VERDICT.—The question of the good faith of a third party in receiving certificates of deposit by indorsement in due course, where the evidence is conflicting, is one for the jury.

[4] ID.—CHARACTER OF INDORSER—BAD FAITH.—The fact that the indorsee of certificates of deposit suspected the indorser of dishonesty does not show bad faith affecting the standing of the indorsee as a holder in due course.

[5] ID.—THREAT OF ATTACHMENT SUIT—MENACE. — That the transfer of the certificates of deposit to the indorsee was induced by threats of an attachment suit against the indorser does not show that such certificates were procured through menace, as affecting the indorsee's standing as a holder in due course.

[6] DURESS—THREAT OF ATTACHMENT SUIT.—Threat of an attachment suit is not duress.

[7] APPEAL—CONFLICT OF EVIDENCE—FINDINGS.—Where there is a conflict of evidence the finding of the trial court will not be disturbed on appeal.

[8] NEGOTIABLE INSTRUMENTS—JUDGMENTS—COSTS.—In an action by the indorsee of certain certificates of deposit to recover the face value thereof from the indorser and the payee, plaintiff, who was adjudged to be the holder and owner of such certificates, although denied recovery from the payee for want of notice of dishonor, was entitled to recover costs.

---

(1) 8 C. J., p. 348, n. 50. (2) 8 C. J., p. 215, n. 36, p. 217, n. 57, p. 1048, n. 21, p. 1049, n. 22. (3) 8 C. J., p. 1061, n. 61. (4) 8 C. J., p. 517, n. 40, p. 518, n. 50. (5) 8 C. J., p. 1053, n. 51. (6) 13 C. J., p. 400, n. 73. (7) 4 C. J., p. 883, n. 33. (8) 15 C. J., p. 27, n. 86.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie R. Hewitt, Judge. Affirmed.

The facts are stated in the opinion of the court.

Goudge, Robinson & Hughes for Appellant.

---

3. See 19 Cal. Jur. 1050.
4. See 19 Cal. Jur. 865.
7. See 2 Cal. Jur. 921; 2 R. C. L. 204.

Rush M. Blodget and T. P. Menzees, Jr., for Respondent.

CAMPBELL, J., *pro tem.*—Plaintiff, claiming to be the holder in due course of four certain negotiable certificates of deposit issued by the State Bank of Merrill, Michigan, payable to the defendant Thomas Moran, or order, each dated February 16, 1921, and each for $1,000, brought this action to recover the face thereof, to wit: four thousand dollars, with interest, from defendants Thomas Moran and H. B. Eshleman as indorsers. The defendant Eshleman having absconded and not having been served with process, the action proceeded against the defendant-appellant Thomas Moran alone.

The defenses pleaded by the appellant were that there had been no notice of dishonor or protest; that plaintiff was not a holder in due course, and that plaintiff had become possessed of the certificates without consideration and in bad faith and through menace and duress practiced upon H. B. Eshleman, in whose hands the certificates of deposit had been placed by appellant to be used only in the purchase of certain real property in Los Angeles, and that the certificates of deposit had not been used for that purpose. The appellant asked for affirmative relief and to be adjudged the owner and entitled to the possession of the four certificates of deposit.

The court found that the instruments had not been protested as alleged and that plaintiff was not entitled to recover from defendant-appellant as an indorser, but did find that plaintiff was a holder in due course as against the affirmative defense of appellant and that plaintiff was the owner of the certificates of deposit and entitled to their possession and that she was entitled to recover costs. Judgment was made and entered by the court following these findings, and costs assessed against appellant.

Thereafter defendant-appellant duly moved for a new trial, and this having been denied, a bill of exceptions was prepared and this appeal prosecuted from the judgment.

The following is a summary of the facts as shown by the evidence:

The defendant H. B. Eshleman was a real estate agent engaged in that business in Los Angeles under the name of

"H. B. Eshleman Realty Company," which was not a corporation and which was entirely owned by Eshleman, who signed as president.

The defendant-appellant Moran, who was the owner of the four certificates of deposit in question, was desirous of purchasing certain real property in Los Angeles, and for this purpose signed his name on the back of the certificates of deposit and left them, on February 24, 1921, with the H. B. Eshleman Realty Company in its escrow department according to certain escrow instructions. These instructions read in part as follows:

"I hand you at this date four certificates of deposit on the State Bank of Merrill, Michigan, for $1000 each, and being numbered Nos. 5971, 5972, 5973 and 5974 respectively, all of which you are authorized to use in connection with your escrow No. 4180 when you can secure for me a title guarantee on the property and premises situate Nos. 1723 to 1725½ Ocean View Avenue, in the city of Los Angeles, being a four-family flat building, according to the legal description thereof, which will show that the record title to said property is vested in myself, Thomas Moran, a single man, free from incumbrances except . . . "

The Eshleman Company was never able to secure a deed for Moran of this property. The certificates of deposit were not used by Eshleman for the purpose for which they were placed in escrow, but were on the same day that they were received—February 24, 1921—indorsed by Eshleman and then delivered by him to the plaintiff, to whom Eshleman was at the time indebted in the sum of $5,093.35.

The indebtedness of Eshleman to the plaintiff arose from the following transaction. In October and November, 1920, the plaintiff had entrusted the Eshleman Realty Company in its escrow department with $5,000 to purchase certain real property, according to certain escrow instructions given by the plaintiff. These instructions were never carried out, and the plaintiff demanded the return of her money. By December 20, 1920, she began to suspect the good faith of the transaction and placed the case in the hands of her attorney. With her brother, Dr. I. W. Traverse, she called upon Eshleman a number of times and demanded the return of her money. On February 7, 1921, her attorney wrote Eshleman to the effect that the $5,000 placed in his hands

by the plaintiff was a trust fund and that from admissions which Eshleman himself had made to Dr. I. W. Traverse, Eshleman had been guilty of embezzlement—a very serious offense.

On February 23, 1921, plaintiff visited the office of Eshleman, demanded payment of the indebtedness with interest, and received from Eshleman a check for $5,093.35, drawn by Eshleman himself with instructions not to present it until the following day. The check was deposited by the plaintiff in the First National Bank of Los Angeles on February 23, 1921. The check was not honored on the 24th of February, 1921, payment thereof being refused by the bank upon which it was drawn, and upon being advised of this fact the plaintiff, her brother, Dr. I. W. Traverse, and her brother's wife went at once to the office of Eshleman, met him as he was coming from his office, confronted him with the information that the check which he had given them was dishonored and demanded an explanation, and plaintiff told him that unless he settled this obligation at once she had given her attorney instructions to bring suit and attach his property immediately. Eshleman had the four certificates of deposit involved in this action in his hands, and he immediately turned them over to the plaintiff.

After receiving the certificates of deposit the plaintiff, on February 24, 1921, took them to the First National Bank of Los Angeles, and, after indorsing them, deposited them to her account in that bank. The First National Bank forwarded the certificates of deposit to the Corn Exchange National Bank, Chicago.

On March 2, 1921, the defendant Eshleman absconded, and H. W. Nesbit, who was in charge of the escrow department of the Eshleman Company, wired to the State Bank of Merrill, Michigan, to stop payment of the certificates of deposit, and payment was on that day stopped.

Appellant urges that the trial court erred: (1) In finding that there was a consideration given to the appellant for signing and delivering the certificates of deposit to the defendant Eshleman: (2) in finding that the plaintiff paid full or any consideration for the certificates of deposit; (3) in finding that the plaintiff was a holder in due course and received the certificates of deposit in good faith; (4) in finding that it was untrue that the plaintiff procured the

certificates of deposit through menace; (5) in concluding that the plaintiff was entitled to judgment that plaintiff was the holder and owner of the certificates of deposit; (6) in concluding that plaintiff was entitled to judgment for costs.

[1] The trial court found that the indorsement by Moran to Eshleman was for a consideration, namely, the "agreement and arrangement between defendant Eshleman and defendant Moran." The record shows that Eshleman Realty Company undertook to effect a purchase of certain real estate for defendant Moran, or as appellant phrases it, "to deliver him a clear deed." This undertaking was sufficient consideration for the indorsement. Moran never expected to get back the certificates nor did he stipulate that they be returned.

[2] As to the second point urged by appellant that the court erred in finding that the plaintiff paid full or any consideration for the certificates of deposit, it is sufficient to say that the evidence, a *résumé* of which has been given, shows that plaintiff paid a valuable consideration for the certificates. "Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value and is deemed such whether the instrument is payable on demand or at a future time." (Civ. Code, sec. 3106.) Under the rule established in this state a pre-existing debt constitutes an indorsement for a valuable consideration sufficient to protect the purchaser. (*Pezzoni* v. *Greenwell,* 178 Cal. 652 [174 Pac. 60]; *Sackett* v. *Johnson,* 54 Cal. 109; *Russ, etc.,* v. *Muscupiabe,* 120 Cal. 532 [65 Am. St. Rep. 186, 52 Pac. 995]; *Robinson* v. *Smith,* 14 Cal. 94; *Naglee* v. *Lyman,* 14 Cal. 450; *Payne* v. *Bensley,* 8 Cal. 260 [68 Am. Dec. 318].)

It is conceded by appellant that Eshleman was indebted to respondent Mrs. Silberschmidt in the sum of $5,093.35. Eshleman had given her a check for that sum, which check was not honored by the bank. The subsequent loss or recovery of this dishonored check is immaterial. Respondent had threatened Eshleman with an attachment suit if he did not settle his obligation at once and told him that she would not sue him and attach his property if he settled with her. Surely either the pre-existing debt or the forbearance to sue is a valid consideration, and the certificates being indorsed

and delivered to respondent for a valid consideration, answers appellant's third claim that the evidence does not support the finding "that the plaintiff was the holder in due course and received the certificate of deposit in good faith." [3] The question of good faith, where the evidence is conflicting, is one for the jury or for the trial court in case a jury is waived (8 Cor. Jur. 1061), and the trial court has found for respondent on this issue.

[4] Counsel for appellant calls the attention of the court to many quotations from the evidence to indicate that Mrs. Silberschmidt was suspicious of Mr. Eshleman's honesty; this has been held not to impute bad faith. Inasmuch as commercial paper circulates on the same plane as money, and hence may legitimately find its way into the hands of almost anyone, it follows that the occupation or profession of the transferor is not of itself sufficient to put the purchaser on inquiry concerning the validity of the consideration or other defenses to the paper, or to *mala fides* on his part in taking it without inquiry. Even knowledge of the assignor's crookedness in business matters does not charge the purchaser with the duty of making inquiry. (*Setzer* v. *Deal,* 135 N. C. 428 [47 S. E. 466] ; 8 Cor. Jur. 518.)

[5] Appellant contends that menace and threats were used and that therefore the court erred in finding "that it was not true that the plaintiff procured the certificates of deposit through menace"—appellant's fourth assignment of error—and refers to a letter written by respondent's attorney to Eshleman in which the following appears: "I will state, as stated by me in a previous letter, that Mrs. Silberschmidt does not, nor do I, desire to do you any injustice, or to cause you any unnecessary inconvenience; but rest assured, Mr. Eshleman, that our patience is almost exhausted, and that if it is necessary for us to take action, no half way measures will be resorted to." During this time Eshleman was in his letters insisting that he had done no wrong, and it nowhere appears in the record that Mrs. Silberschmidt or her attorney *knew* that he had.

At the trial the shortage of $40,000 and the absconding of Eshleman was proved, but this letter took place *after* the indorsement. Evidence was also offered as to Eshleman's state of mind—his worries, his mental condition. But there is nothing to show that Mrs. Silberschmidt knew anything

about his health or the shortage, and it is clear that Eshleman was later fully advised of Mrs. Silberschmidt's intention, viz., to sue him and attach his property, if he did not return her money, and, if he did return it, she would not file the suit.

The trial court had before it all of the evidence, and it was the province of the trial court to determine whether Eshleman was intimidated by the letter of plaintiff's attorney and the demands made personally. The trial court had heard respondent testify: "I had told him that unless he settled this obligation with me at once that I had given my attorney instructions to bring suit and attach his property" —"I accept them (the certificates) as $4000 cash payment and told Eshleman I would not bring suit"—"he (Eshleman) also had shown me where he had assets amounting to $165,000, and so of course I believed he had property which he could sell"—"so I said I would accept them as cash payment for the $4000, and of course in that case I will not sue you or attach any of your property."

[6-7] The best that can be said in favor of appellant's contention is that there is a conflict in the evidence on the question of threats or menace. From the findings it is evident that the trial court believed that Eshleman feared only an attachment suit, and there is sufficient evidence to justify such a conclusion. Threat of an attachment suit is not duress. The rule is so well established that where there is a conflict of evidence the finding of the trial court will not be disturbed, that the citation of authority is unnecessary.

The fifth and sixth assignments of error are without merit.

[8] From the facts found by the court respondent is entitled to judgment that she is the holder and owner of the certificates of deposit and to judgment for her costs.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.