[Civ. No. 2994. Third Appellate District.—March 9, 1927.]

M. J. HAVENS, Appellant, v. W. L. FOSKETT et al., Respondents.

[1] NEGOTIABLE INSTRUMENTS — TRADE ACCEPTANCES — OBLIGATION OF ACCEPTOR—RECITALS.—A recital in a trade acceptance that the obligation of the acceptor arises out of the purchase of goods from the drawer does not put a purchaser thereof on inquiry to ascertain if in fact goods had been sold by the drawer, although he knows the drawer to be a dealer in commercial paper and not in commodities.

[2] ID.—ASSIGNMENTS—HOLDER IN DUE COURSE—INDORSEMENT.—An assignee, after maturity, taking from a finance company (a holder in due course) trade acceptances indorsed in blank by the drawer, acquired all rights of the finance company, under section 3139 of the Civil Code, which provides that a holder who derives his title through a holder in due course and who is not a party to any fraud or illegality affecting the instrument has all the rights of the former holder.

[3] ID. — PURCHASE FOR VALUE BEFORE MATURITY — HOLDER IN DUE COURSE.—A finance company, purchasing trade acceptances from a dealer in commercial paper for value before maturity without notice of facts to put it on inquiry, is a holder in due course.

[4] ID.—INDORSEMENT IN BLANK—DELIVERY.—Under section 3115 of the Civil Code, a negotiable instrument indorsed in blank is payable to bearer and may be negotiated by delivery.

[5] ID. — FAILURE TO PAY ONE OF SERIES WHEN DUE — OPTION OF HOLDER TO DECLARE ALL OF SERIES DUE AND PAYABLE—CONSTRUCTION.—A clause in each of six trade acceptances that the instrument was one of a series, and that failure to pay any one when

---

1. What circumstances are sufficient to put a purchaser on inquiry, notes, 29 L. R. A. (N. S.) 351; 44 L. R. A. (N. S.) 395; L. R. A. 1918F, 1148. See, also, 19 Cal. Jur. 866; 3 R. C. L. 1072.

2. See 19 Cal. Jur. 860; 3 R. C. L. 1036.

3. See 19 Cal. Jur. 856; 3 R. C. L. 1036.

4. See 19 Cal. Jur. 819; 3 R. C. L. 970.

due would give the holder the option to declare any or all of the series due and payable, did not destroy their negotiability.

[6] ID.—PROMISSORY NOTES—ACCELERATION CLAUSE—CONSTRUCTION.— An acceleration clause in a promissory note does not destroy its negotiability.

---

(1) 8 C. J., p. 511, n. 82.    (2-4) 8 C. J., p. 358, n. 89, p. 467, n. 31, p. 501, n. 18, p. 518, n. 42.    (5) 8 C. J., p. 140, n. 97.    (6) 8 C. J., p. 138, n. 74.

APPEAL from a judgment of the Superior Court of Merced County. E. N. Rector, Judge. Reversed.

The facts are stated in the opinion of the court.

G. C. Ringole, Samuel Hamburg and Henry ·Heidelberg for Appellant.

Stephen P. Galvin for Respondents.

FINCH, P. J.—The plaintiff, as assignee of Central Finance Company, a corporation, brought this action to recover the amount of six trade acceptances drawn by J. B. Vallen, doing business as Cadillac Manufacturing Company, upon defendants and duly accepted by them. They are all of one series, dated February 2, 1923, and payable 65, 70, 75, 80, 85, and 90 days respectively after date. They are all identical in amount and in terms except as to time of payment. The first one of the series reads as follows:

"Trade Acceptance

$105.00        San Francisco, California Feby 2, 1923.
                                        *Date of Sale.*

To Ives Hdw Co
*Dealers Name.*

| 6th St | Los Banos | Calif |
| *Street Address* | *Town* | *and State* |

Sixty Five Days after date pay to the order of ourselves *days or Months.*
at San Francisco, Calif One Hundred and Five and no/100 Dollars.

---

6. Provision accelerating maturity as affecting negotiability, notes, 125 Am. St. Rep. 200; 35 L. R. A. (N. S.) 390; L. R. A. 1915B, 472; 34 A. L. R. 872. See, also, 19 Cal. Jur. 815; 3 R. C. L. 909.

This is one of a series of Trade Acceptances. Failure to pay any when due gives holder the option to declare any or all of the series due and payable. If action is instituted hereon, the undersigned promise to pay a reasonable attorney's fee in any such action.

Accepted at Los Banos Calif.   On Feb 2 1923
　　　　*Dealer's Town*　　*Same date of Order.*
Payable thru Portuguese American Bank
　　　　*Name of Dealer's Bank.*　　Cadillac Mfg. Co.
Located at Los Banos Calif
Ives Hdw Co
*Signature of Acceptor or Trade Name*
By WL Foskett.　　　　　　　　　J. B. Vallen
*Authorized Buyer.*

The obligation of the acceptor hereof arises out of the purchase of goods from the drawer.''

All of these acceptances were sold to the Central Finance Company February 6, 1923, for a valuable consideration. They were indorsed on the back thereof, ''Cadillac Mfg. Co. by J. B. Vallen Mgr. Demand, notice nonpayment and protest hereby waived. Cadillac Mfg. Co. By J. B. Vallen, Mgr.'' All of the instruments, after the maturity thereof, were assigned by the Central Finance Company to the plaintiff for collection. Vallen procured the instruments through fraud and the goods in payment for which they were given were never delivered. The court found:

''That each of said six trade acceptances or bills of exchange provided, that upon the default in the payment of any one of the series, said acceptances setting forth the fact that each was one of a series, all others would become due and payable at the option of the holder of the one whereof default in payment had been made; that said trade acceptance or bills of exchange did not in any way identify any of the others of the series, and the court finds that said trade acceptance or bills of exchange are non-negotiable. . . . That the plaintiff took each and all of said trade acceptances or bills of exchange after maturity and at a time more than one month after the first one became due; that no consideration therefor was paid by the plaintiff; and that the plaintiff took by an assignment, not made or endorsed upon the original trade acceptance nor upon any paper attached to the same.''

Judgment was entered in favor of the defendants and the plaintiff has appealed therefrom.

[1] Respondents contend that the fact that the trade acceptances were given for the purchase price of goods "was sufficient notice to put the purchaser, Central Finance Company, on guard to ascertain if in fact goods had been sold by the drawer. The Central Finance Company knew Vallen, and knew him to be a dealer in paper for it had bought other paper from him prior to this transaction. . . . It knew that Vallen was not a dealer in commodities. Why then should he have paper reciting the fact that he sold commodities? With these facts before it, the Central Finance Company cannot truthfully say that it took paper as a *bona fide* holder for value and without notice." Respondents have not called attention to any evidence to the effect that "Vallen was not a dealer in commodities" and none has been discovered. [2-4] The purchase of the instruments by the Central Finance Company appears to have been made in the usual course of the business in which it was engaged and the record does not show anything to create a suspicion even which should have put the company on inquiry. It purchased the instruments for their full value, less a discount of five and one-half per cent. If the facts were as stated by respondents they would not show that the company is not a holder in due course. (8 C. J. 501; *Popp v. Exchange Bank,* 189 Cal. 296, 303 [208 Pac. 113]; *Goodale v. Thorn,* 199 Cal. 307 [249 Pac. 11, 13]; *Silberschmidt v. Moran,* 79 Cal. App. 533 [250 Pac. 205, 207].) It is further to be observed in this connection that the court did not find that the Central Finance Company was not a holder in due course. The fact that the plaintiff, if he be treated as the owner of the instruments rather than as the assignee thereof for collection, took by assignment without indorsement upon the instruments by the Central Finance Company is immaterial. The company took by indorsement and became a holder in due course. The indorsement was in blank. "An instrument so indorsed is payable to bearer, and may be negotiated by delivery." (Civ. Code, sec. 3115.) "A holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such

former holder in respect of all parties prior to the latter."
(Civ. Code, sec. 3139.)

[5] Respondents' main contention is that the acceleration
clause in the instruments rendered them non-negotiable. In
support of this contention several California cases, decided
before the enactment of the Uniform Negotiable Instrument
Law, are cited. In *Utah State National Bank* v. *Smith,*
180 Cal. 1 [179 Pac. 160], the court had under consideration
the effect of an acceleration clause in a single promissory
note. The court said: "The note in question was dated and
payable in Utah, and its negotiability must be determined by
the law of the place of payment. . . . The terms of the
Utah statute are shown in evidence, and, so far as the ques-
tion here involved is concerned, are substantially the same as
the Uniform Negotiable Instrument Law enacted in Cali-
fornia in 1917. . . . Before the enactment of this law the
great weight of authority was that under the law-merchant
the clause accelerating the due rate did not destroy its
negotiability. (Citing cases.) All the decisions based upon
the Uniform Negotiable Instrument Law, so far as we are
advised, hold that the clause in question does not destroy
the negotiability of a promissory note. . . . Nor are we
called upon to prophesy what the courts of Utah may do
when the same question comes before them under the Uni-
form Negotiable Instrument Law. The question simply is:
What interpretation do we place upon the language of the
Utah statute in proof in this case? . . . The note was ne-
gotiable under the law of Utah." This decision is in effect
an interpretation of the Uniform Negotiable Instrument
Law of California. Respondent relies on the case of *Iowa
Nat. Bank* v. *Carter,* 144 Iowa, 715 [123 N. W. 237]. There
were involved in that case three notes, each containing a
clause that in case of default in payment thereof the payee
"shall have the option to declare any or all other notes
given for the purchase price of said property to be at once
due and payable," and another clause that "if at any time
the said party of the second part . . . shall deem themselves
insecure, then the whole amount of said sum of money in
said notes mentioned, which shall not have been paid, . . .
shall be immediately due and payable." The section of the
Negotiable Instrument Law of Iowa under consideration was
identical with section 3085 of the Civil Code of California.

The court did not base its decision upon the fact that the accelerating clause related to the three notes and was not limited to the note in which the clause appeared. It is said: "Before the adoption of the Negotiable Instruments Law, we had held that these provisions in a note and mortgage rendered it non-negotiable. . . . Since the general adoption of the Negotiable Instruments Act, the courts have held to the same doctrine." [6] Respondents also cite *Wayne County Nat. Bank* v. *Cook*, 73 Ind. App. 404 [127 N. E. 773]. The note involved in that case did not contain an acceleration clause, but it was held to be non-negotiable by reason of other conditions contained therein. The Iowa case is in conflict with the decision in *Utah State National Bank* v. *Smith, supra*, in so far as it seems to hold that an acceleration clause in a promissory note destroys its negotiability. The latter case follows the well-established rule that an acceleration clause in a promissory note does not destroy its negotiability. No reason appears for holding that a different rule should apply to a series of notes, each containing such a clause. "Where several notes maturing at different times belong to a single transaction and form a connective series, the negotiability of one of them is not affected by the provision that, on the failure of the maker to pay any one of the notes of the series to which it belongs, the rest shall become due and payable to the holder." (8 C. J. 140; *Chicago Railway Equipment Co.* v. *Merchants' National Bank*, 136 U. S. 268 [34 L. Ed. 349, 10 Sup. Ct. Rep. 999, see, also, Rose's U. S. Notes]; *Commerce Trust Co.* v. *Guarantee Title & Trust Co.*, 113 Kan. 311 [214 Pac. 610]; *Farmers' Bank & Trust Co.* v. *Dent*, 206 Ky. 405 [267 S. W. 202]; *Schmidt* v. *Pegg*, 172 Mich. 159 [137 N. W. 524]; *Walter* v. *Kilpatrick*, 191 N. C. 458 [132 S. E. 148]; *White* v. *Hatcher*, 135 Tenn. 613 [188 S. W. 61]; *Bright* v. *Offield*, 81 Wash. 442 [143 Pac. 159].)

The judgment is reversed.

Plummer, J., and Hart, J., concurred.