No. 29,232.

JOSEPH E. WEIR and GEORGE S. ALDRICH, *Appellants*, v. JAMES O. McVEY et al., *Appellees*.

(288 Pac. 766.)

744

Opinion filed June 7, 1930.

*Thomas J. Keenan* and *W. L. Sayers,* both of Hill City, for the appellants. *W. E. Mahin,* of Norton, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The action is one by the plaintiffs, indorsees of a negotiable promissory note signed by the defendants, to foreclose a mortgage given to secure its payment. Judgment was rendered in favor of the defendants, and the plaintiffs appeal.

The plaintiffs alleged that they were the holders of the note in due course, having acquired it by indorsement before maturity for valuable consideration and without notice of any defect therein. There were two defenses—one that the note and mortgage had been procured by fraud and that the plaintiffs procured the note by assignment, and the other that the note had been given for speculative securities, stock in a corporation, and that the corporation had not obtained permission to sell its stock in the state of Kansas. The defendants filed a cross petition in which they asked that their title to the land be quieted. The answer and the cross petition were verified. The execution of the note and mortgage was admitted in the answer and cross petition.

The court submitted the issues to a jury, which answered special questions as follows:

"1. Did either of the plaintiffs or their agent, who procured said note from Savage Harvester Company, know, at the time of purchasing the same, any of the facts under which McVey signed said note? A. Yes.

"2. At the time of purchasing said note did either of plaintiffs personally have any knowledge of the facts or circumstances surrounding the procuring of the note from defendant McVey? A. Yes.

"3. If you answer question 2 in the affirmative, then you may state which of said plaintiffs had such knowledge, and you may also state the substance of what was known to plaintiff or plaintiffs at the time of making said purchase relative to the facts and circumstances under which said note was given. A. Weir, through his partnership with Nelson, who was a partner of Hall, puts him in a position to know all facts concerning the Savage Harvester Company.

"4. Was either of plaintiffs told by any person prior to making said purchase of the note in suit, or informed in any manner at the time of or prior to the purchase of said note that the note was taken in the first instance as the property of Savage Harvester Company? A. Yes.

"5. Did either of plaintiffs or their agent who purchased said note know that either the Salina Motors Company, or Savage Harvester Company, was selling stock in Kansas in violation of blue-sky law, at any time? A. According to their testimony, they did not care.

"6. Did either of plaintiffs or any agent of theirs know at the time of purchasing said note that it was given in consideration of the purchase of stock in any company? A. Yes.

"7. Was the note in suit indorsed, 'Pay to the order of Savage Harvester Co.' 'Salina Motors Co. L. S. Weller' before November 18, 1921? A. No.

"8. Was the note in suit indorsed 'The Savage Harvester Co. F. H. Hall' before November 18, 1921? A. No.

"9. Did the plaintiffs complete the purchase of the note sued on on or about the 19th of May, 1921? A. No.

"10. What did plaintiffs pay for said note? A. According to plaintiffs' testimony, $2,500.

"11. From whom did plaintiffs purchase said note? A. Savage Harvester Company.

"12. Was there any bad faith in the purchase of said note by plaintiffs? A. Yes.

"13. If you answer the foregoing question in the affirmative, you may state fully what facts you find constituted such bad faith. A. Nelson, a partner of Weir, and agent of Weir and Aldrich, was also partner of Hall, a director of Savage Harvester Company. Also, the note in suit was not indorsed at time of purchase.

"14. At the time plaintiffs purchased said note was it indorsed as now indorsed by the name of Salina Motors Company and by the name of Savage Harvester Company? A. No."

■ The plaintiffs did not ask for personal judgment against the defendants on the note; foreclosure of the mortgage was all that was requested. The court submitted the issues to a jury. To that the plaintiffs objected. They argue that it was error to submit the cause to a jury for a general verdict.

Section 60-2903 of the Revised Statutes reads:

"Issues of fact arising in actions for the recovery of money or of specific real or personal property shall be tried by a jury, unless a jury trial is waived or a reference be ordered as hereinafter provided. All other issues of fact shall be tried by the court, subject to its power to order any issue or issues to be tried by a jury or referred as provided in this code."

Under that statute it was within the power of the court to submit the issues to a jury. (*Drinkwater v. Sauble*, 46 Kan. 170, 26 Pac. 433; *Maclellan v. Seim*, 57 Kan. 471, 46 Pac. 959; *Wood v. Tarbush*, 63 Kan. 779, 66 Pac. 991; *Mills v. Hartz*, 77 Kan. 218, 223, 224, 94 Pac. 142; *Houston v. Goemann*, 99 Kan. 438, 441, 162 Pac. 271.)

■ The plaintiffs complain of instructions one and five given by the court concerning the burden of proof. The court, after stating the issues, instructed the jury that—

"1. The burden of proof is upon the plaintiffs to prove by a preponderance of the evidence in this case that they purchased the note and mortgage sued on before maturity and for value, and that they were the owners thereof at

the time of the commencement of this action—the amount due thereon, and that they purchased the said note sued on by indorsement, as hereinafter explained. . . ."

"5. If the plaintiffs have sustained their burden of proof, as hereinbefore stated, then the burden of proof is upon the defendants to prove by clear, decisive and convincing evidence that the note sued on was procured by the false representations of the agent of the payee in said note, as hereinafter stated: . . ."

The court also gave the following instructions:

"6. If the defendants have sustained the burden of proof as stated in the instructions just preceding this instruction, then the burden of proof is upon the plaintiffs to prove by a preponderance of the evidence in this case that they had no notice of the claimed misrepresentations as contended for by the defendant James O. McVey in his second amended answer and cross petition, at the time they claimed to have purchased the note, and that they were purchasers of said note in good faith, and before maturity of said note."

"9. If the jury find and believe from the evidence that the note in suit was sold and indorsed. to plaintiffs before its maturity, for value, and that the plaintiffs, at such time, had no actual notice of any defect in the note, and that it was not purchased in bad faith, then your verdict should be for the plaintiffs, irrespective of any fraud claimed to have been practiced against the defendant James O. McVey."

The burden was first on defendants to establish that the note had been procured by fraud. (*Ireland v. Shore,* 91 Kan. 326, 137 Pac. 926; *Stevens v. Keegan,* 103 Kan. 79, 83, 172 Pac. 1025; *Home State Bank v. Porter,* 120 Kan. 594, 596.) After the evidence had been introduced to prove that the note had been procured by fraud, the burden passed to the plaintiffs to prove that they had acquired the note in due course—that is, that they became the holders of the note before it was overdue; that they took it in good faith and for value, and that at the time they purchased it, they had no notice of any infirmity in the note or defect in the title of the person from whom they obtained it. (*Bank v. Seaunier,* 104 Kan. 7, 9, 178 Pac. 239; *Schmidt v. Benedict,* 104 Kan. 196, 178 Pac. 444; *Security Co. v. Low,* 112 Kan. 153, 210 Pac. 190.) While the first and fifth instructions may have been subject to objection, the sixth and ninth instructions made it clear that the burden was on the defendant to establish fraud, and after that burden had been discharged the burden was on the plaintiffs to prove that they had acquired the note in due course.

■ The plaintiffs complain of instruction numbered nineteen, which was as follows:

"A letter from the Denver State Bank to the First National Bank of Flagler, Colo., of date November 13, 1921, was admitted in evidence: The jury may consider the contents of that letter for the purpose of showing from what source said last-named bank received the note sued on in this action, and the date said note was received by said last-named bank; but the jury cannot consider the contents of said letter for the purpose of determining the date of indorsement or assignment of said note."

That instruction was based on a letter written by George Roach, the cashier of the Denver State Bank in Denver, Colo., to the First National Bank, of Flagler, Colo., on May 13, 1921, and containing the following language:

"We are inclosing herewith James O. McVey note in amount of $2,500, dated November 18, 1920, indorsed by the Salina Motors Company and the Savage Harvester Company; also assignment of the Savage Harvester Company to W. E. Hall and Carlyle Nelson, covering promissory note in amount of $2,500, and one made by the Savage Harvester Company to W. E. Hall and Carlyle Nelson in amount of $2,500. These we have been informed are to be held by you in escrow until payments are made according to the agreement with the Savage Harvester Company, which they have forwarded to you direct."

The plaintiffs requested that the instruction be modified. The request was denied. Neither the writer of the letter nor the bank to which it was addressed was a party to this action or to the transaction out of which the note in controversy arose. The statements made by the writer of the letter were not given under oath and were not binding on any party to this action. So far as this action is concerned, those statements were hearsay. There was no error in giving instruction numbered nineteen.

■ Complaint is made of the admission of certain evidence. The defendant James O. McVey testified that prior to the commencement of this action he personally investigated the records in the office of the blue-sky board of Kansas to find out something about the Savage Harvester Company. Over objection, he testified that, with the assistance of an officer in the bank commissioner's office, he investigated the records to ascertain whether or not the Savage Harvester Company had been given permission to sell its stock in this state, and there learned that such permission had not been given. The defendants, by their verified answer and by their verified cross petition, presented that question as an issue. Plaintiffs in their reply alleged that they had acquired the note before maturity, in due course, without notice or knowledge of any infirmity

in it, and that they had purchased it for a valuable consideration. The plaintiffs did not allege that the harvester company, at the time the note was given, had permission to sell its stock in the state of Kansas. Some one from the bank commissioner's office, acquainted with its records, could have testified that permission had not been given to the harvester company to sell its stock in this state. That would have been the best evidence that could have been produced. If James O. McVey was acquainted with the records in that office, he could testify to that fact. He may not have made himself sufficiently acquainted with the records to have been permitted to testify to that fact, but it was not specifically put in issue by the reply of the plaintiffs, who could have proven the fact readily if such permit had been granted.

The note sued on was given for stock in the Savage Harvester Company and a harvester combine. Neither stock nor combine was ever delivered to the defendants.

Section 60-3317 of the Revised Statutes, in part, reads:

"The appellate court shall disregard all mere technical errors and irregularities which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining, where it appears upon the whole record that substantial justice has been done by the judgment or order of the trial court. . . ."

The evidence of the witness McVey may have been inadmissible, but the result reached on the trial is so strictly in accord with justice that the quoted part of the statute prohibits this court from reversing the judgment because of the admission of that evidence.

The judgment is affirmed.