[Civ. No. 2133. Third Appellate District.—November 26, 1920.]

## A. H. KOPPERUD, Respondent, v. S. T. COOKSON et al., Appellants.

[1] PROMISSORY NOTE—PURCHASE BEFORE MATURITY—CONSIDERATION—INQUIRY OF MAKERS.—A purchaser of a negotiable promissory note before maturity is not required to make inquiry of the makers as to the consideration and circumstances leading up to its execution.

[2] ID.—PURCHASE AT TEN PER CENT DISCOUNT—INSUFFICIENT EVIDENCE OF INFIRMITY OF NOTE.—The purchase of a negotiable promissory note more than one year prior to its maturity at a ten per cent discount is not of itself sufficient to raise an inference or suspicion that the purchaser was buying a tainted instrument.

2. Payment of less than face value of promissory note by transferee as affecting *bona fides*, note, 17 **Ann. Cas.** 386.

APPEAL from a judgment of the Superior Court of San Joaquin County. J. A. Plummer, Judge. Affirmed.

The facts are stated in the opinion of the court.

Geo. F. McNoble, W. Goodwin Williams and J. Le Roy Johnson for Appellants.

Ostrander & Carey for Respondent.

BURNETT, J.—The action was brought by the indorsee of a promissory note given in consideration of the sale of a certain stallion. The defense is that there was a failure of consideration by reason of the false and fraudulent representations made by the seller as to the age, soundness, and procreative ability of the horse, and that "a pretended indorsement or assignment of said note was made by the said Norm W. Thompson [the payee] to plaintiff, but said indorsement or assignment was fraudulent and void; that plaintiff, at the time said note was indorsed and assigned to him, knew that the same was without consideration and void, and knew that the said stallion was unsound and diseased in body and was worthless to said defendants, and said plaintiff did then and there conspire with said Norm W. Thompson to cheat and defraud the said defendants by having said note indorsed by said Norm W. Thompson to said plaintiff for the purpose of preventing the said defendants from making their defense of want of consideration when suit should be brought upon said note."

It may be that the defendants were "stung" as one of the witnesses expressed it; it is quite probable, indeed, that Thompson perpetrated a fraud in inducing the purchasers to rely upon his representations as to the character of the horse.

But be that as it may, there can be no serious doubt that the judgment of the trial court must be upheld upon the other ground that plaintiff was "an indorsee in due course," —in other words, that he "in good faith, in the ordinary course of business, and for value, before its apparent maturity or presumptive dishonor, and without knowledge of its actual dishonor," acquired the note duly indorsed

to him. (Sec. 3123, Civ. Code.) The learned trial judge gave to this question careful consideration, as is apparent from his opinion filed in the case. He points out that at the time of the transaction the "uniform negotiable instrument law" had not become operative, but that no substantial change was effected thereby as far as this question is concerned and that the case is governed by the principles announced in sections 3137 and 3140 of the Civil Code as amended by the legislature of 1917 [Stats. 1917, p. 1541]. He proceeds: "That the plaintiff acquired the note in question in due course is admitted. That he acquired it in good faith is denied, and the basis of denial is placed upon the circumstances that he purchased the note at a ten per cent discount, and made no inquiry of the makers of the note as to the consideration and the circumstances leading up to its execution by them." He declares that if plaintiff had made such inquiry he probably would not have discovered any fact indicating the invalidity of the note, but at most that the defendants had paid for the horse more than he was worth, but that it was worth more than the note which he was about to buy. Thereupon follows this: [1] "But the law relating to negotiable instruments does not necessitate any such action on the part of the intending purchaser of such paper. If he knows of any circumstances affecting the instrument, then he is chargeable therewith, and if anything occurs in the course of the negotiation with the persons with whom he is dealing, or if anything appears upon the face of the instrument which would arouse the suspicion of a reasonable person as to the infirmity of the note, then his failure to make inquiry to ascertain the truth concerning the instrument would amount to bad faith.

"It may be here stated that the court has found nothing in the testimony indicating that at the time of the purchase of the note anything occurred or anything appeared which would have caused a reasonable person, in the situation of the plaintiff, to question the validity of the instrument, or that it was not executed for a good and sufficient consideration.

[2] "It is urged that the purchase of the note at a ten per cent discount was of itself sufficient to cast a cloud upon the transaction and also the fact that the transaction

took place between eighty and a hundred miles distant from the place where the note was executed. The apparent reason for Thompson's presence in the city of Oakland to visit his brother-in-law, who was an employee of the plaintiff, answers any objection that may be made as to the transaction occurring in Oakland rather than in Manteca. So far as the plaintiff was concerned, Thompson was there for a legitimate and valid reason. His presence under such circumstances would not call for inquiry or arouse any suspicions. That Thompson was taking notes from farmers where he had sold different stallions is also true. That the different notes ran over a considerable period of time, and thus deprived Thompson of the use of ready money, appears also to be a fact. And, considering that the note in controversy had something over a year to run, and that the use of ninety per cent of its face value would mean more to Thompson, if paid then, than the full amount of the note obtained after a delay of more than a year, the court cannot very well come to the conclusion that a ten per cent reduction was at all out of the ordinary, or such as to raise an inference that the plaintiff knew he was buying, or ought to have known that he was buying a tainted instrument.'' The trial judge then called attention to the distinguishing features of the several cases upon which appellant relies, and after citing *Eames* v. *Crosier,* 101 Cal. 260, [35 Pac. 873], *Blochman Commercial & Sav. Bank* v. *Moretti,* 177 Cal. 256, [170 Pac. 419], *Citizens' Bank* v. *Stewart,* 22 Cal. pp. 91, [133 Pac. 337], as enunciating the rule to be applied in such instances, he concluded: ''From what has been said, the conclusion is unavoidable that so far as the plaintiff is concerned, it must be held that he is a purchaser in good faith, that the note was taken in the ordinary and usual course of business a year or more before its maturity, without notice of any defenses, and that an adequate consideration was paid therefor, and is entitled to judgment in his favor, irrespective of any fraudulent practices on the part of Thompson in its procurement.''

It seems unnecessary to add anything to what was stated by the trial judge. Even if we concede that the evidence might support a finding that plaintiff was not a purchaser in good faith, it cannot be gainsaid that the court was amply warranted in reaching a contrary conclusion. The

trial judge was in a position to gauge properly the testimony of the plaintiff, and it would be presumptuous in us to say that he was misled.

The judgment is affirmed.

Prewett, P. J., *pro tem.*, and Hart, J., concurred.