[Civ. No. 5514. First Appellate District, Division One.—September 27, 1927.]

D. F. SMITH, Appellant, v. J. P. ARMSTRONG et al., Respondents.

Newlin & Ashburn for Appellant.

Donald Armstrong, Garfield R. Jones and Philip Cohen for Respondents.

CASHIN, J.—An appeal from a portion of a judgment entered in an action on a promissory note.

The note was executed on August 12, 1920, by defendant Armstrong to Nathan & Co., a corporation, for the sum of $3,000, the principal with interest thereon being payable one year after date. The instrument was negotiable in form and was indorsed by the payee to defendant Proctor, who in December, 1920, indorsed the same to Blanche G. Lark, by whom it was assigned to the plaintiff for collection. Judgment was entered against the indorsers and in favor of defendant Armstrong, and from the latter portion of the judgment the plaintiff appeals.

It is contended that certain findings are unsupported, that the court erred in its rulings and its conclusion from the

facts found that Blanche G. Lark was not an innocent purchaser or a *bona fide* holder of the note and not entitled to judgment against defendant Armstrong.

Nathan & Co. was the selling agent for the stock of the Blue Jacket Mining Company, a corporation, which owned certain mining claims in Arizona, and the consideration for the note was the issuance by the latter corporation of 2,000 shares of its stock to the wife of defendant Armstrong.

Armstrong denied the allegation in the complaint that the indorsement to Blanche G. Lark was for a valuable consideration, and alleged as a separate defense that the stock was valueless, that its purchase and the execution of the note were induced by the fraudulent representations of the president of the mining company as to the condition and value of the claims and by like misrepresentations made by Nathan & Co. contained in a letter sent to defendant and in an advertisement inserted by the latter corporation in a newspaper, all of which the defendant believed and relied upon in making the purchase.

The court found the allegations of the special defense to be true, and with respect to the purchase of the note by Blanche G. Lark its findings were as follows:

"That at the time of the assignment of said note from defendants Nathan & Co. and George H. Proctor to the said Blanche G. Lark she was the wife of Charles T. Lark, who was then, and for about twenty years had been a practicing attorney in the city of New York, and for a long time had been and then was attorney for the defendant George H. Proctor and the Granite Springs Estates, an Arizona corporation, of which the said defendant George H. Proctor was the president; and at all times herein the said Blanche G. Lark was acting solely and only through her said husband, as her agent, in all transactions connected with the purchase of the said note and incident thereto, and the said Blanche G. Lark knew nothing of the said transaction except as aforesaid related to her by her said husband.

"That at the time of the said assignment from said defendant Nathan & Co. and George H. Proctor, the said defendant, J. P. Armstrong, was wholly solvent and financially responsible and able to pay the said note at its maturity; that at the time the face value of the said note was more than $3,070.00; that up to December 18th, 1920, the date

when the said defendants Nathan & Co. and George H. Proctor assigned the said note, the said Charles T. Lark had never heard of the defendant Nathan & Co., and made no inquiry from anyone regarding said corporation except from defendant Proctor; that at the time defendant Proctor had his headquarters with defendant Nathan & Co. and introduced the said Charles T. Lark to Mr. G. Nathan, the president of said corporation. That at all the said times the said Charles T. Lark had never heard of defendant Armstrong except that on December 17th, 1920, the defendant Proctor told him that the defendant Nathan & Co. would allow him to borrow money on the said note; that neither the said Charles T. Lark nor his wife Blanche G. Lark had ever purchased any commercial paper in California and had not operated in commercial paper anywhere. That the said Charles T. Lark made no inquiry before the purchase of said note regarding the circumstances of the consideration for which it was given, and made no inquiry from anyone or effort to learn of defendant Armstrong's financial ability, or whether the said note was valid or given for a valuable consideration except that the said G. Nathan told him that Armstrong was a wealthy man and that the Merchants National Bank of Los Angeles had looked defendant Armstrong up and found he was perfectly good and that they would take his note. That at that time the said Charles T. Lark was informed by defendant Nathan that defendant Armstrong resided at Venice, California, seventeen miles from Los Angeles. That said Blanche G. Lark through her said husband purchased said note for the sum of $2,500.00, believing that the said Nathan was responsible, and that if defendant Armstrong did not pay the note Mr. Nathan would, and expecting to bring suit if the note was not paid. That the said Charles T. Lark made no inquiry as to what authority Mr. Nathan had to transfer the note, never saw the said G. Nathan except on that one occsaion, and made no inquiry to ascertain whether Nathan's statements were true, but bought the note as a matter of speculation.

"That the said Charles T. Lark knew at the time of said transfer that the defendant George H. Proctor was financially embarrassed and unable to pay the said note. *That the said Blanche G. Lark was not an innocent purchaser for value of said note sued on.*"

The conclusions of law from the findings were "that said promissory note was procured by fraud and is void as against the defendant J. B. Armstrong for want of consideration; that Blanche G. Lark was not nor was the plaintiff an innocent purchaser or a *bona fide* holder of said note as against said defendant Armstrong; that plaintiff is not entitled to take anything by this action against said defendant Armstrong; that as to said defendant Armstrong said note be canceled by the clerk of this court. . . . ''

The appeal is presented on a bill of exceptions in which are specified the particulars in which it is claimed that the evidence fails to support certain of the findings; but with respect to the findings that the representations alleged were made and were untrue, that these representations were relied upon by Armstrong and that the stock was valueless, the particulars in which the same were unsupported are not specified; and the same is true of the trial court's conclusion "that said Blanche G. Lark was not an innocent purchaser for value of said note sued on." The respondents contend, therefore, that the question whether these findings are supported is not open to review.

It is the rule of the code (sec. 648, Code Civ. Proc.) enforced by numerous decisions that where the record is presented in the form of a bill of exceptions, and it is sought to review the sufficiency of the evidence, the bill must specify the particulars in which the same is insufficient (*Mills* v. *Brady,* 185 Cal. 317 [196 Pac. 776]; *Bird* v. *American Surety Co.,* 175 Cal. 625, 631 [166 Pac. 1009]; *Meads, Seaman & Co.* v. *Lasar,* 92 Cal. 221, 227. [28 Pac. 935]). In view of the rule respondents' contention must be sustained as to those findings which are properly conclusions of fact in so far as the particulars in which it is claimed that they are unsupported are not specified.

But it is contended by appellant that the conclusion that Mrs. Lark was not an innocent purchaser was but a legal conclusion, which being also found among the conclusions of law in the decision is assigned by him as an error of law.

It has been held in numerous cases that the conclusion that a party is or is not a *bona fide* or innocent purchaser or holder is one of law and not of fact (*Wing* v. *Hayden,* 10 Bush (Ky.), 276; *Downer* v. *Read,* 17 Minn. 470 (493); *White* v. *Brown,* 14 How. Pr. (N. Y.) 282, 286;

*Roger* v. *Morton,* 46 Misc. Rep. 494 [95 N. Y. Supp. 49]; *Ludlow* v. *Woodward,* 117 App. Div. 525 [102 N. Y. Supp. 647]; *Davidson* v. *Buchanan,* 164 App. Div. 352 [149 N. Y. Supp. 640]; *Aurrecorchea* v. *Sinclair Co.,* 60 Cal. 532; *State* v. *Hackley,* 124 La. 854 [50 South 772]; *Voorhees* v. *Fisher,* 9 Utah, 303 [34 Pac. 64]; *Bunting* v. *Mick,* 5 Ind. App. 289 [31 N. E. 378, 1055]); and such conclusions must be regarded according to their character, notwithstanding they may be found among the findings of fact (*Towle* v. *Sweeney,* 2 Cal. App. 29 [83 Pac. 74]; *Lynip* v. *Alturas School District,* 24 Cal. App. 426, 438 [141 Pac. 835]; *Faure* v. *Drollinger,* 60 Cal. App. 594, 601 [213 Pac. 724].)

It is clear from the foregoing cases that the conclusion must be treated as one of law; and the trial court having concluded as a matter of law that Mrs. Lark was not an innocent purchaser, it is apparent that the same conclusion was *inadvertently made a part of the findings of fact,* in which connection it should be disregarded.

█ A holder in due course is one who has taken the instrument under certain conditions, among which are that he took in good faith and for value, and that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it (Civ. Code, sec. 3133).

█ Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course (Civ. Code, sec. 3140).

It is provided by section 3137 of the Civil Code that ''To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounts to bad faith.''

In the present case the note was complete and regular on its face, and it was found that Mrs. Lark became a holder for value before the note was overdue. It was not found that she or her agent had actual knowledge of any infirmity in the note or defect in the title of the person negotiating

it; but it is contended by respondent that the findings from which the conclusion of law was drawn that she was not an innocent purchaser or a *bona fide* holder show that her agent had knowledge of such facts that his action in taking the instrument amounted to bad faith.

A purchaser of a negotiable instrument before maturity is not bound to make inquiry of the maker as to the consideration or circumstances leading to its execution (*Copperud* v. *Cookson,* 50 Cal. App. 180 [194 Pac. 748]); and mere knowledge of facts sufficient to put a prudent man on inquiry without actual knowledge, or a mere suspicion of an infirmity or defect of title, does not preclude the transferee from occupying the position of a holder in due course unless the circumstances are such as to justify the conclusion that failure to make inquiry arose from a suspicion that inquiry would disclose a vice or defect in the instrument (*Popp* v. *Exchange Bank,* 189 Cal. 296 [208 Pac. 113]; *Goodale* v. *Thorn,* 199 Cal. 307 [249 Pac. 11]).

It has also been held that a purchaser is not charged with the duty to make inquiry by the fact alone that he had knowledge of the indorser's want of honesty in business matters (*Sitzer* v. *Deal,* 135 N. C. 428 [47 S. E. 466]; *Vaughan* v. *Brandt,* 21 Idaho, 628 [123 Pac. 591]); and while the fact that a transferee of negotiable paper purchases it for a sum less than its face value may be considered as other facts in the case upon the question of good faith, yet in order to constitute him a holder in due course it is not necessary that the price should equal the face value of the note (*Schoen* v. *Houghton,* 50 Cal. 528; *Copperud* v. *Cookson, supra; Kent* v. *Barnes,* 72 Ill. App. 617; *Farber* v. *National F. & I. Co.,* 140 Ind. 54 [39 N. E. 249]; *Wright Investment Co.* v. *Frisco Realty Co.,* 178 Mo. 72 [77 S. W. 296]; *Citizens' Bank* v. *Rymon,* 12 Neb. 541 [11 N. W. 850]; *Oppenheimer* v. *Farmers etc. Bank,* 97 Tenn. 19 [56 Am. St. Rep. 778, 33 L. R. A. 767, 36 S. W. 705]; *Lay* v. *Wissman,* 36 Iowa, 305; *McNamara* v. *Jose,* 28 Wash. 461 [68 Pac. 903]; *Phelan* v. *Meyers,* 67 Pa. 59 [5 Am. Rep. 402]).

Nor, according to *Schoen* v. *Houghton, supra,* was the fact found by the court that Mrs. Lark "bought the note as a matter of speculation" sufficient to impugn her title as a *bona fide* holder.

While findings of fact are to receive such a construction as will uphold rather than defeat the judgment, and if from the facts found other facts may be inferred which will support the judgment, it will be assumed that the trial court made such inferences (*Paine* v. *San Bernardino etc. Co.*, 143 Cal. 654 [77 Pac. 659]; *Breeze* v. *Brooks*, 97 Cal. 77 [22 L. R. A. 257, 31 Pac. 742]; *Gould* v. *Eaton*, 111 Cal. 644 [52 Am. St. Rep. 201, 44 Pac. 319]; *People's etc. Bank* v. *Rickard*, 139 Cal. 285 [73 Pac. 858]).

In the present case the facts found, which were analogous to those in *Popp* v. *Exchange Bank, supra*, were insufficient to support an inference of bad faith or the conclusion as a matter of law that Mrs. Lark was not an innocent purchaser or a *bona fide* holder.

The court admitted, over objection, testimony of a witness to a conversation had with Nathan, the president of defendant Nathan & Co., some months after the transfer of the note to Mrs. Lark, in which Nathan admitted the falsity of the representations as to the value and condition of the mining claims. This testimony as to plaintiff was incompetent (*First Nat. Bank* v. *Wolff*, 79 Cal. 69 [21 Pac. 551, 748]), but as the particulars in which the finding that the representations were false were not specified in the bill of exceptions, and from all that appears the finding may have been supported by other evidence, we cannot say that the testimony was prejudicial or that its admission affected the result.

An objection by Armstrong to a question as to the details of a conversation between Charles T. Lark and defendant Proctor shortly before the transfer of the note was sustained; and it is claimed by appellant that this testimony was relevant on the question as to the good faith of Lark and his wife. This ruling, if erroneous, was invited by the attorney for appellant, who stated in response to the objection that as to Armstrong the testimony would be hearsay. A party who by his conduct induces the commission of error is estopped from asserting that the action of the court was erroneous.

Without reviewing the evidence in detail, it will suffice to say that those findings as to which appellant has specified the particulars in which he contends they were not justified by the evidence were sufficiently supported.

It follows from the insufficiency of the findings to support the conclusion of the trial court that Mrs. Lark was not an innocent purchaser or *bona fide* holder, that the portion of the judgment appealed from cannot be sustained, and it is therefore ordered that the portion of the judgment which reads as follows: "It is further ordered and adjudged that plaintiff take nothing by his said action against defendant J. P. Armstrong and that defendant J. P. Armstrong do have and recover from the plaintiff his costs and disbursements in this action amounting to the sum of ...... dollars, and that as to said defendant J. P. Armstrong the promissory note sued on be canceled by the clerk of this court," be and the same is reversed.

Tyler, P. J., and Knight, J., concurred.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 23, 1927.