[Civ. No. 3959.  Third Appellate District.—December 26, 1929.]

THE BANK OF UNITED STATES (a Corporation), Appellant, v. L. O. FOREMAN, Respondent.

John W. Hart and Delvy T. Walton for Appellant.

Stick, Moerdyke & Gibson and John C. Stick for Respondent.

THOMPSON (R. L.), J.—This is an appeal by the plaintiff from an unsatisfactory judgment in its favor upon several promissory notes.

September 9, 1925, the Cox-Klemin Aircraft Corporation of New York executed, unconditionally indorsed and transferred to the plaintiff for a valuable consideration nine promissory notes for $5,000 each. Prior to the transfer they were each indorsed by the defendant. The notes were in the following form:

"$5,000.00                    New York, Sept. 9, 1925.

"Sixty days after date we promise to pay to the order of Cox-Klemin Aircraft Corp. Five thousand & no/100 Dollars, at Bank of United States. Value received.

"No. —— Due Nov. 9.

"Cox-Klemin Aircraft Corp.
"L. Charles Cox, Pres."

(Indorsed)
"Cox-Klemin Aircraft Corp.
"L. Charles Cox, Pres.
"L. Charles Cox.
"L. O. Foreman."

The Aircraft Corporation was financially involved. The defendant Foreman was a substantial stockholder in the corporation and resided at Los Angeles. A plan existed to liquidate the indebtedness by executing and discounting notes of the corporation, and by then recapitalizing the institution on the basis of a much larger valuation. This plan was disclosed to the defendant by Mr. Smyth, a member of the New York law firm of Lee, Smyth & Wise, which had charge of the refinancing project. For the purpose of extending his financial standing to the paper, the defendant filled out these nine notes at his office in Los Angeles, in the form above quoted, with the exception that the dates were left blank and the notes were not then signed or indorsed by the Aircraft Corporation. The defendant then affixed his unqualified indorsement on the back of each note and sent them to Mr. Smyth to be executed and indorsed by the Aircraft Corporation and discounted at the bank. The following message of instructions was sent to Smyth by the defendant:

"S. C. 48, 106 N. L.
"G. S. Los Angeles, Calif. 9

"Nathan Smyth
"Care Lee, Smyth and Wise, 7 Dey St.,
"New York, N. Y.

"This will authorize you to turn over to Capt. Cox forty-five thousand dollars worth of notes which you now have bearing my endorsement for the purpose of being discounted at Bank of United States proceed(s) to be used as follows to take up notes bearing my personal endorsement amounting

to thirty thousand dollars with W. S. Guardian Co. American Trust and Seventh Avenue National and forward same to me here together (with) certificate of deposit for fifteen thousand dollars to be held by me which is to cover cash balance left there per Cox wire (period) Write me when Guardian is paid also any other information.

"L. O. FOREMAN."

The bank had no knowledge of this telegram or the conditions which it contained. The defendant never personally met any of the officers of the bank. He dealt entirely through Smyth. Prior to accepting and paying the Aircraft Corporation notes the following message was sent to the defendant from B. K. Marcus, the vice-president of the bank through whom the sale of the notes was negotiated:

"Cox Klemin Aircraft Corporation offer us for discount nine of their notes each for five thousand dollars dated today payable sixty days after date at . our bank in New York. Notes endorsed by you and Cox. Please telegraph confirming your endorsement."

The defendant confirmed the transaction by telegram in the same language contained in the following letter subsequently sent to him by Marcus:

"New York, September 10, 1925.

" . . . We confirm having sent you the following telegram on September 9th . . . (here follows the language of the foregoing telegram) to which you replied as follows: 'My endorsement on nine notes each for five thousand dollars of Cox Klemin Aircraft Corporation and endorsed by Cox is Okay.'

"Acting on your telegram we have discounted for the Cox-Klemin Aircraft Corporation the notes herein mentioned."

These notes were discounted by the plaintiff bank September 9, 1925, acting solely through Mr. Marcus, its vice-president. The transaction was negotiated through the assistance of one Freedman who was employed for this purpose by Mr. Smythe in behalf of the Aircrafe Corporation. Cox was also present at the time. Neither Smyth nor Foreman was present. The bank consented to discount the notes, but insisted upon twenty-five per cent of the amount remaining with the bank for deposit in compliance with its customary bank rule. Mr. Cox, however, insisted that the Aircraft Corporation required the immediate use of

approximately $45,000. It was then arranged that the Aircraft ·Corporation should execute an additional note of $15,000, which it did. The defendant had no knowledge of this $15,000 note and it did not contain his indorsement. In lieu of the cash for this last note, a certificate of deposit payable to the Aircraft Corporation was issued, indorsed, attached to the note and retained in the bank. When this note matured in sixty days it was paid by transfer of the certificate to the bank and the cancellation thereof. The transaction regarding the last note appears to have been a mere formal circuitous method of conforming to the rule of the bank. On the face of the transaction the entire amount involved was $60,000. As a matter of fact the Aircraft Corporation was negotiating nine of its notes for $5,000 each, and was paid by the bank $45,000 less the interest on the notes until the date of maturity. Thirty thousand dollars of this sum was turned over to Smyth, who paid the obligations pursuant to his telegram of instructions from the defendant.· The certificate of deposit was not sent to the defendant.

None of these notes were paid. At the time of their maturity they were duly presented for payment and dishonored. Notice of dishonor and nonpayment was regularly served.' Suit was thereupon filed. The complaint stated a simple cause of action for the nonpayment of these nine promissory notes. The answer merely denied *seriatim* the allegations of the complaint. At the beginning of the trial on April 26, 1927, a motion on the part of the defendant for a continuance was denied. On the following day the trial was concluded and the cause was submitted. May 23d a court memorandum for judgment in favor of the plaintiff was filed. June 14th the defendant served and made a motion to amend his answer to conform to the proofs, which was granted over plaintiff's objection. The amendment was filed June 21st.

In this amendment to the answer, for the first time the defendant alleged that the notes were indorsed and transferred to the bank upon the express condition that $15,000 of the proceeds therefrom were to be held on deposit for his security; that the bank took the notes with knowledge of this condition and that the defendant was entitled to credit for this sum on his obligation arising from his in-

dorsement of the notes. The trial court took this view of the case, and adopted findings to the effect that the defendant was not a holder or transferee of the notes, but was a mere accommodation indorser thereof; that the notes were forwarded to Smyth to be delivered to the bank and discounted for the benefit of the Aircraft Corporation on condition that $15,000 of the proceeds therefrom should remain on deposit in the bank, represented by a certificate of deposit which was to be delivered to and held by the defendant as his security; that on September 9, 1925, the bank accepted and discounted these notes with full knowledge of the said conditions, but failed to comply therewith; that without the knowledge of the defendant an additional $15,000 note of the Aircraft Corporation without the defendant's indorsement was also at the same time discounted at the bank, in payment for which a $15,000 certificate of deposit was issued to the Aircraft Corporation, indorsed to the bank and held by it as security for the payment of this last note upon the maturity of which the note was paid by the cancellation of the certificate; that the notes became due on November 9, 1925, but that no part of the principal or interest from the date of maturity was paid; that the notes were duly presented and dishonored and that notice of nonpayment and dishonor thereof was regularly served; and that the bank fraudulently converted and appropriated to its own use the $15,000 represented by the certificate of deposit, to the defendant's damage in that sum.

Thereupon the court rendered judgment for the plaintiff for the sum of $30,000 and interest only, crediting the defendant with said sum of $15,000.

From this judgment the plaintiff has appealed. It is contended that the court erroneously permitted the defendant to amend his answer and that the evidence does not support the allegations of the amendment. It is also asserted that the bank was an innocent purchaser of the notes before maturity, for value, without knowledge of the alleged conditions or infirmities, and that the plaintiff is entitled to judgment for the full amount of the notes with interest from the date of maturity.

An accommodation indorser of a note for the benefit of the payee, prior to delivery is ordinarily liable to all parties subsequent to the payee. (Sec. 3145, subd. 3, Civ. Code.)

There is no evidence of knowledge on the part of the bank of the condition of transfer of the notes to the effect that $15,000 of the proceeds were to be retained by the bank as security for the defendant. Smyth was not an agent of the bank. The defendant had never before dealt with this bank and except for the unconditional telegram confirming authorization to discount the notes, above quoted, he never communicated with the bank regarding the transaction. The defendant dealt entirely through Mr. Smyth. The negotiations on the part of the Aircraft Corporation were conducted entirely through Mr. Marcus, the vice-president. He disclaims any knowledge of the conditions upon which the notes were to be transferred.

Mr. Marcus testified regarding the $15,000 certificate as follows:

"We regarded the $15,000 loan as the mechanics for creating a $15,000 balance and the rest of the money to be at the disposal of the Cox-Klemin Aircraft Corporation, that is $45,000, and the most that Cox could withdraw of the $60,000 I loaned to Cox-Klemin was $45,000. Q. As a matter of fact was not this fifteen thousand dollar certificate of deposit to be security for these nine notes of five thousand dollars each? A. It was not. Q. Was not that what Cox told you should be done? A. It was not."

Mr. Marcus said he had but one communication with Smyth regarding the transaction, which conversation took place over the phone and that nothing was said about delivering the $15,000 certificate to the defendant, or about any conditions which Foreman imposed upon the transfer of the notes. He said he was not even told that the $30,000 which was turned over to Smyth was to be used at the request of the defendant to pay specific obligations. He was asked: "Did anyone tell you that? A. No. Q. Did you know it? A. No."

Regarding the conditions upon which the notes were to be transferred, all that the record discloses is that Mr. Smyth testified that Marcus called him up and inquired about the financial standing of the defendant and that he then told Mr. Marcus that "those notes aggregated $45,000, . . . we had them to turn over to Captain Cox to be discounted under Mr. Foreman's instructions, and that he (Mr. Marcus) stated that they were going to keep $15,000 on deposit,

my recollection being (that sum was to be) represented by a certificate of deposit, and that I told him . . . yes, I so understood the transaction. . . . Q. Did you tell Mr. Marcus that Mr. Foreman wanted that $15,000 to remain on deposit in connection with this loan to be made on the nine notes aggregating $45,000? A. I am quite certain I did not say anything about Mr. Foreman's desires to that effect. The conversation was that *the bank* . . . wanted to keep $15,000 on deposit and would give a certificate of deposit for that amount. Mr. Marcus did not say anything to me about the additional loan of $15,000 to the Cox-Klemin Aircraft Corporation.''

Assuming that the defendant instructed Smyth to discount the notes only on condition that he was to hold a certificate of deposit for $15,000 of the proceeds, the record is nevertheless devoid of any evidence that this information was ever imparted to the bank. Marcus even took the precaution to wire the defendant for confirmation of his authority to discount the notes. This confirmation was promptly sent unconditionally. The record contains no evidence that the bank had any previous knowledge of the alleged condition. We are unable to find circumstances which would even place the bank on inquiry as to the existence of such a condition. The defendant appears to have been ignorant of the execution of the additional $15,000 note and certificate of deposit. He never complained of a failure to send him the certificate. This transaction was evidently a mere method of conforming to the bank rule to retain on deposit about twenty-five per cent of the proceeds of such transactions. The bank accepted the financial standing of the defendant as ample security for the nine notes aggregating $45,000, and did not permit the balance of the money to leave its control. The defendant was the only responsible party on the notes upon whom the bank relied. His name was not on the last $15,000 note. That may reasonably account for the bank retaining the certificate of deposit for this sum. Our attention is not called to any evidence showing knowledge of the condition or infirmities of the notes on the part of the bank. Nor will the circumstances support a finding of fraud or collusion on the part of the bank with respect to the transaction. We are therefore impelled to hold that the record shows the

bank to have been an innocent purchaser and holder of the nine notes, prior to maturity for value, without knowledge of any conditions or infirmities thereof. Neither the amendment to the answer nor the findings in conflict with this conclusion is supported by the evidence.

A pleading may be amended at the trial in the discretion of the court only for the purpose of conforming to the evidence adduced in response to the valid issues. (Sec. 470, Code Civ. Proc.) Amendments to pleadings at or following the trial and before judgment is rendered, should not be allowed over the objection of the adverse party, which raises new issues that were not included in the original pleadings. (*Firebaugh* v. *Burbank,* 121 Cal. 186 [53 Pac. 560]; *Bowman* v. *Wohlke,* 166 Cal. 121 [Ann. Cas. 1915B, 1011, 135 Pac. 37]; *Tower* v. *Wilson,* 45 Cal. App. 123, 135 [188 Pac. 187]; *Williams* v. *Youtz,* 187 Cal. 107, 109 [172 Pac. 383].)

In the present case the defendant was relieved by the trial court of his obligation to the extent of $15,000 on the theory that the bank fraudulently converted the certificate of deposit to its own use contrary to the instructions of respondent. Certainly the fraud of the bank was not an issue at the trial of the case. The plaintiff had no opportunity to defend upon an accusation of fraud. A charge of fraud must be alleged and clearly established. (12 Cal. Jur. 800, sec. 62; 12 R. C. L. 416, sec. 164; 31 Cyc. 685; 10 Standard Ency. of Proc. 49; *Harrison* v. *McCormick,* 89 Cal. 327 [23 Am. St. Rep. 469, 26 Pac. 830]; *Abrams* v. *Daugherty,* 60 Cal. App. 297, 304 [212 Pac. 942].)

Since the evidence in the present case fails to show that the bank had actual notice of the conditions or infirmities in the transfer of the notes, but upon the contrary shows the notes were purchased in good faith for a valuable consideration prior to maturity, the bank must be deemed to have been a holder thereof in due course, and the accommodation indorser of the notes was therefore liable for the payment thereof upon dishonor of the notes by the maker after due notice thereof. (Sec. 3145, subd. 3, Civ. Code.)

It is the policy of the law merchant, and has long been an established rule to encourage the free circulation and credit of negotiable paper.

Accordingly it has been uniformly held that the holder of such instruments in due course without knowledge of their infirmities may recover upon the obligations regardless of defects which might impeach their validity between former parties. (Sec. 3138, Civ. Code; 3 R. C. L. 997, sec. 207.)

"To constitute notice of infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." (Sec. 3137, Civ. Code.)

Smyth was not the agent of the bank. Regardless of the nature of restrictions or conditions upon the transfer of the notes which may have been communicated to him, in the absence of evidence of knowledge thereof on the part of the bank, the appellant must be deemed to be the holder in due course free from infirmities and therefore entitled to payment of the notes in full. (*Goodale* v. *Thom,* 199 Cal. 307, 314 [249 Pac. 11] ; *Smith* v. *Armstrong,* 85 Cal. App. 624, 631 [260 Pac. 347] ; *Havens* v. *Foskett,* 81 Cal. App. 653 [254 Pac. 642] ; *Johnson* v. *Ulrey,* 201 Cal. 456, 469 [257 Pac. 505, 511].) In the last-mentioned case, which was an appeal from a judgment in favor of the holder of a promissory note in due course, wherein the defendant in his answer formally charged a fraudulent transfer thereof to the holder, the court said:

"The evidence fails to show that Brown, the cashier of the bank, had any knowledge of the unlawful scheme of Carrere and Little. The bank therefore, took appellant's note free of any notice or knowledge of said fraud, and, having given a valuable consideration therefor, is entitled to enforce the payment thereof against appellant."

Clearly the defendant was the victim of the plan of the Aircraft Corporation to refinance its affairs. That organization procured $45,000 of the bank's money. The Aircraft Corporation was evidently defunct. The bank discounted the notes, relying upon the responsibility of the defendant. Whether the loss was sustained through the fault of the Aircraft Corporation or through the unfaithfulness of the attorney Smyth is not material so far as this action is concerned, so long as the bank was ignorant of the

wrong. So far as the record discloses both the plaintiff and the defendant were innocent parties. One or the other must lose, in this transaction, this substantial sum. Since the defendant indorsed the notes and thus created the situation which led to the sale and discounting of the notes, he must suffer the loss. It is the law that when a loss is sustained which must be borne by one of two innocent parties, it will fall upon him whose acts occasioned the loss even though he be free from actual fault, but especially if it occurs through his negligence by imposing undue confidence in another. This doctrine is founded upon the theory that in delegating his trust to another who proved false, he has created a relationship tantamount to that of an agency which he may not refute. (3 R. C. L. 999, sec. 209.)

The notes do not provide specifically for interest. Under such circumstances, in the absence of any provision to the contrary, the holder is entitled to recover the legal rate of interest from the date of maturity, which in the state of California is seven per cent per annum. (1 Deering's Gen. Laws, 1923, p. 1384, Act 3757; 14 Cal. Jur. 681, sec. 7.)

It follows that the findings of knowledge of the infirmities of the notes and fraud on the part of the appellant are unsupported by the pleadings or evidence, and should be disregarded. Since the condition upon which the notes were to be discounted was not made an issue by the pleadings upon which the case was actually tried, we must assume that the record shows without conflict that the appellant was the holder of the notes in due course; that they were unpaid and the nonpayment thereof duly protested, and that the bank is therefore entitled to recover the full amount of $45,000, together with the legal rate of interest thereon from November 9, 1925, which was the date of maturity. The valid findings of the court will support this judgment.

The judgment is modified accordingly and the trial court is directed to enter judgment in favor of appellant for $45,000, with seven per cent interest thereon from November 9, 1925, together with costs of trial and costs on appeal.

Plummer, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 25, 1930, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 24, 1930.

Shenk, J., dissented.