[Civ. No. 14055.   Second Dist., Div. One.   Sept. 30, 1943.]

P. E. COOMBS, Respondent, v. MINNIE MINOR, Individu-
ally and as Administratrix, etc., Appellant.

Samuel J. Rosenthal and Maurice Rose for Appellant.

George P. Kinkle and John S. Hunt for Respondent.

YORK, P. J.—Defendant Minnie Minor, individually and as administratrix of the Estate of Albert Fonda Minor, deceased, appeals from a judgment in favor of plaintiff Coombs which was rendered in the instant action for money had and received and to declare a trust.

The complaint sets up three causes of action: The *first* alleges that within two years prior to his death, Albert Fonda Minor became indebted to plaintiff for money had and received for her use and benefit in the sum of $12,100; that defendant, individually and as administratrix has taken said money into her possession and control and is indebted to plaintiff therefor.

The *second* cause of action alleges that on July 10, 1939, plaintiff placed the sum of $4,600 in the hands of decedent, and on February 10, 1941, she placed $7,500 in the hands of decedent, upon his express promise and agreement to hold and safely keep said money for her use and benefit and upon her request to return the same to her; that decedent represented to plaintiff that he had so arranged his affairs that said money would be returned to her immediately upon his death; that defendant Minnie Minor, individually and as administratrix, has such money in her possession and holds the same as trustee for the use and benefit of plaintiff.

The *third* cause of action alleges that plaintiff and Albert Fonda Minor for many years prior to the latter's death, and particularly on July 10, 1939 and February 10, 1941, had sustained toward each other a relation of trust and confidence; that decedent had advised plaintiff on numerous occasions regarding her business affairs and plaintiff relied implicitly upon such advice; that on July 10, 1939, as to the sum of $4,600, and on February 10, 1941, as to the sum of $7,500, decedent represented that if plaintiff would place said money in his possession he would keep it for her and return it upon her demand, and that he would so arrange his affairs that such sum of money would be returned to plaintiff upon his death; that, relying upon such representation, plaintiff placed said money, aggregating the sum of $12,100 in decedent's possession; that since the death of said Albert Fonda Minor, neither of said sums of money has been returned to plaintiff, but that Minnie Minor, as administratrix, and as an individual, has taken possession thereof and now holds the whole thereof, as trustee for the use and benefit of plaintiff.

In each of said causes of action, it is alleged that plaintiff filed her claim against the Estate of Albert Fonda Minor,

deceased, for the money alleged to be due her, but that said claim was rejected by Minnie Minor, as administratrix; also, that defendant, Minnie Minor, the widow of Albert Fonda Minor, claims an interest in said money and has possession thereof, or some of it, in her capacity as an individual, as distinguished from her capacity as administratrix of her husband's estate.

The answer denies generally the allegations of the complaint and sets up as affirmative defenses: (1) the statute of limitations; (2) the statute of frauds; (3) a release or compromise; and (4) that the complaint does not state facts sufficient to constitute a cause of action against Minnie Minor, individually, or as administratrix.

As to the first cause of action, the court found in favor of plaintiff and against defendant *individually;* and, as to the second and third causes of action, the court found in favor of plaintiff and against defendant, *individually and as administratrix,* and rendered judgment for the sum of $12,100, less $632.10, paid by defendant as personal property taxes, or the sum of $11,467.90.

This appeal is prosecuted by Minnie Minor, individually, and as administratrix of the Estate of Albert Fonda Minor, deceased, upon the grounds:

1. The evidence is insufficient to sustain the judgment;

2. The court erred in the admission and exclusion of evidence;

3. The court abused its discretion in failing to set aside the findings and judgment and reopen the case for further proceedings and the introduction of additional evidence on the motion for a new trial.

In connection with appellant's first contention, it is urged: The evidence is insufficient to sustain the finding that appellant Minnie Minor, *as an individual,* is indebted to respondent in the sum of $11,467.90, *on the first cause of action,* because, if decedent were indebted to respondent for money had and received for her use and benefit, then only the estate would be liable, and that Minnie Minor, as an individual, can be held liable only on the theory of and upon a cause of action properly alleging a trust. It is also argued that the first cause of action as to Minnie Minor, as decedent's widow, and as an individual, is barred by subdivision 1, section 339, Code of Civil Procedure, as to the $4,600 alleged to have been paid to decedent on July 10, 1939, the complaint herein having been filed on February 13, 1942, more than two years thereafter.

Insofar as the statute of limitations is concerned, no action accrued against appellant, either individually or as administratrix, until the death of the trustee, Albert Fonda Minor, which occurred on April 6, 1941. With respect to the application of the statute of limitations to a voluntary trust in personalty, such as the one here under consideration, it is stated in 25 Cal.Jur. 277, section 137, as follows: ". . . where it appeared that the equitable owner made demand to the executor, the court held that the statutory period ran from the time of demand. Where the plaintiff is in effect a creditor, the trust funds not being identifiable, it has been held that the statutory period commences to run from the time of the first publication of the notice to creditors. Other decisions, however, hold that the running of the statute has its inception at the death of the trustee."

It is therefore obvious that the first cause of action is not barred by the provisions of subdivision 1, section 339, Code of Civil Procedure.

The money alleged to belong to respondent was kept in a safe deposit box in the Washington and Vermont Branch of the Bank of America, which was held in joint tenancy by decedent and appellant, his wife. This money was commingled with other money kept in said box, all of which was taken into possession by appellant after her husband's death, and was deposited by her in the same bank in a savings account standing in her name individually and not as administratrix.

In view of such circumstance, the finding that Minnie Minor, as an individual, is indebted to respondent on the first cause of action is proper.

An action for money had and received "may be successfully maintained even though not founded upon allegations showing an express privity of contract between the parties. This is so upon the theory that if one of the parties has received money due and owing under the circumstances which make it his duty to surrender the money to the rightful owner, the law will imply the promise to do so, and thereby create the requisite contractual privity. (*Commissioners* v. *Bloomington*, 253 Ill. 164 [Ann.Cas. 1913A 477, 97 N.E.280]; *Kreutz* v. *Livingston*, 15 Cal. 344; *Colusa County* v. *Glenn County*, 117 Cal. 434 [49 P. 457]; *Whittle* v. *Whittle*, 5 Cal. App. 696 [91 P. 170].)" *Freitas* v. *Freitas*, 31 Cal.App. 19, 20 [159 P. 613.]

Appellant contends that "the evidence is insufficient to sustain the finding that appellants hold as trustees, for the

use and benefit of respondent, the sum of $11,467.90 upon the third cause of action," for the following reasons: (1) there was no fiduciary relationship; (2) there was no proof of indicia of a trust; (3) the evidence was weak and unsatisfactory and that evidence to establish a trust in personalty must be clear and convincing.

The record herein reveals that respondent and Albert Fonda Minor, under the names of Mr. and Mrs. P. E. Coombs, had lived together in various apartments in Los Angeles for several years prior to Mr. Minor's death; that respondent knew Mr. Minor was a married man, but he had stated to her that he was not living with his wife and expected to obtain a divorce from her and marry respondent. Respondent testified that during all of this period she consulted with Mr. Minor every day regarding her affairs and he gave her advice upon which she relied. She further testified, and this is corroborated by the testimony of her sister-in-law, Margaret Coombs, that on or about July 10, 1939, she placed the sum of $4,600 in currency in the hands of Mr. Minor, at which time it was agreed between them that he was to hold the money for respondent and invest it in the theater business; that she never received any portion of it back and had not made demand for its return prior to Mr. Minor's death; that on many occasions subsequent to July 10, 1939, Mr. Minor had referred to this currency as respondent's money and they both discussed investing it in the theater business; that at one time Mr. Minor brought her a card for her signature which she believed gave her access to the safe deposit box where her money supposedly was kept by Mr. Minor.

Respondent also testified that on February 10, 1941, while the intimate and confidential relationship between her and Mr. Minor existed, she gave him $7,500 for safekeeping. This money was delivered to respondent in the office of Mr. Minor's attorney, Mr. Bernard Brennan, who testified that it was given to respondent "in compensation for the time she would be indisposed in effecting a cure of this disease that she had contracted from him, and to compensate her for her medical expenses and so forth . . . that he felt a moral obligation to pay her the money and he wanted to do it"; that Mr. Minor had the money in an envelope and counted it out, and Mr. Brennan prepared a receipt for the same which was signed in his presence by respondent. As to this transaction, respondent testified that she had the money in an envelope when she

and Mr. Minor left Mr. Brennan's office and that she turned to Mr. Minor and said: "Al, what shall I do with this," and Mr. Minor replied: "Prudence, the sensible thing is to let me have it and I will put it in the safe deposit box with the rest of your money." This was agreed upon and the next morning Mr. Minor took the money to the Washington and Vermont Branch of the Bank of America, and when he returned to his automobile where respondent had remained while he was in the bank, he said: "Prudence, you have no reason to worry whatever. Whenever you want that smear of money it is yours."

Mr. Brennan also testified that in the presence of himself, Mr. Maupin, his investigator, and respondent, Mr. Minor made the statement that he had a considerable amount of money, that he and respondent were partners and that Mr. Brennan need not worry about getting his fee in connection with legal services he was rendering for a relative of respondent, who was involved in a traffic violation. With respect to this same incident, Mr. Maupin testified that when Mr. Brennan wondered who was to pay his fee, Mr. Minor said: "You need not worry about that. Miss Coombs is a partner of mine. Has invested money with me . . . I have got plenty of money of hers." This witness further testified he had a conversation with Mr. Minor, relative to the $7,500 he had given to respondent in Mr. Brennan's office, at which time Mr. Minor told him that he and respondent were "the same as husband and wife . . . she is the only one that has any interest in me . . . there isn't any amount of money that can pay her for what she has done for me. . . . I want to see that she is taken care of"; that he had put the $7,500 in some safe deposit box and that respondent had a key to it.

As heretofore stated, after the death of Mr. Minor the sum of $14,570 was found in the safe deposit box at the Washington and Vermont Branch of the Bank of America, which sum of money was taken into the possession of appellant Minnie Minor and deposited in a savings account in the same bank in her own name as an individual.

██ It is urged that neither the close friendship of respondent and decedent, nor their illicit cohabitation is sufficient to establish a confidential relation in a legal sense.

In *Estate of Cover*, 188 Cal. 133, 143 [204 P. 583], the court defined the term "confidential relation" as follows: "Confidential and fiduciary relations are, in law, synonymous,

and may be said to exist whenever trust and confidence is reposed by one person in the integrity and fidelity of another.''

In discussing such relationship in *Steinberger* v. *Steinberger, ante,* p. 116 [140 P.2d 31], an action to establish a constructive trust based upon an oral promise to reconvey real property, it is stated: ''The cases are clear that where there is some sort of a status between the grantor and the grantee, and confidence is reposed, a constructive trust will be imposed upon repudiation of the oral promise to reconvey. Thus actual trust and confidence, plus the relationship of parent and child is sufficient [citing numerous cases] ; *even where the relationship is meretricious (Cole* v. *Manning,* 79 Cal.App. 55 [248 P. 1065].) . . . and where the grantor and grantee had 'relations of great confidence' and were later married (*Bradley Co.* v. *Bradley,* 165 Cal. 237 [131 P. 750] ; Id., 37 Cal.App. 263 [173 P. 1011] . . . In *Stewart* v. *Shearman,* 22 Cal.App.2d 198 [70 P.2d 702], however, it was held that cotenants stand in a confidential relationship to one another.'' (Italics ours.)

The following is taken from 25 Cal.Jur. pages 129, 131, 163, 164, sections 7, 8 and 33: ''While the requisite degree of intimacy is found as a general rule only where the parties are related by affinity, consanguinity or contract, it may possibly exist where the bond between them is merely one of friendship. (*Cox* v. *Schnerr,* 172 Cal. 371, 378 [156 P. 509] ; *Palladine* v. *Imperial Valley etc. Assn.,* 65 Cal.App. 727, 745 [225 P. 291] ; *Bradley Co.* v. *Bradley,* 37 Cal.App. 263, 267 [173 P. 1011] ; *Feeny* v. *Smiley,* 115 Cal.App. 597 [2 P.2d 220] ). . . . If the parties were not related in any degree which the law recognizes as a basis for an inference that confidence was reposed, the transferor must show that the requisite degree of intimacy existed as a matter of fact between him and the transferee. . . . to the maintenance of a suit to enforce the defendant's oral promise it certainly is not essential that the parties should have been related by affinity or consanguinity. The trust may be enforced where it appears that they were merely friends. (*Hays* v. *Gloster,* 88 Cal. 560 [26 P. 367] ; *Sanguinetti* v. *Rossen,* 12 Cal.App. 623 [107 P. 560].) ''

Applying the foregoing rules of law, the evidence is sufficient to establish a relation of trust and confidence between respondent and decedent.

■ In connection with her point that there was no proof ·

of indicia of a trust, while conceding that ''generally speaking the law does not require that the identical money be kept,'' appellant urges that the contents of the safe deposit box discloses no indicia of a trust because the money was not found in either of the envelopes described by respondent, nor in the denominations or quantitative packages described by her; also, because her name had not been added to the title of the box, either in joint tenancy or otherwise, there was nothing to indicate that she had any interest therein.

''. . . an enforceable trust is created where personal property is transferred pursuant to an oral agreement whereby the transferee promises to hold the goods, securities or money in trust for the benefit of the transferor or a third person. The circumstance that the agreement rests in parol affects, not the propriety of giving effect to a disclosed intention to create a trust, but only the question as to whether such an intention is definitely and certainly disclosed. All of the statements of the transferor which were made to the trustee previously to the acceptance of the trust are deemed to be. part of the declaration of trust.

''Proof being made that the defendant received the property pursuant to a promise or oral agreement to hold it for or to transfer it to the plaintiff, suit may be maintained to enforce the plaintiff's ownership.'' (25 Cal.Jur. 156, sec. 27, and authorities there cited. See, also, *Corato* v. *Estate of Corato*, 201 Cal. 155 [255 P. 825].)

''Where the subject matter of the trust was money, and the trustee was insolvent or has died, the rights of the beneficiary are in a measure dependent upon his ability to identify the money as a particular fund or to trace it into specific property. The rules which have been formulated in respect of oral and constructive trusts apply also, it seems, to trusts that are created by formal appointment. If the trustee has died, and the trust moneys cannot be identified or traced, the beneficiary should present the claim to the trustee's executor or administrator. If, however, the money is identifiable, a presentation of the claim is not indispensable to a recovery. . . . Again, if the trustee or his estate is insolvent, the right of the beneficiary to have his claim preferred to those of general creditors is dependent upon his ability to identify or trace the money.

''For these purposes trust moneys are held to be identifiable although they may not have been kept as a separate or

independent fund or deposited as a special account. Nor is an enforcement of the trust affected by the fact that the trustee mingled trust moneys with his own funds. . . . The theory is that if the trustee had at all times a sum in excess of that which is due the beneficiary, it is to be presumed that he kept the trust fund intact." (25 Cal.Jur. 356, sec. 201.) See, also, *Elizalde* v. *Elizalde,* 137 Cal. 634 [66 P. 369, 70 P. 861], and *Mitchell* v. *Dunn,* 211 Cal. 129 [294 P. 386]. In the latter case it was stated: (p. 136) "The rule is now settled in this state that when the money of the trustor can be traced into a particular fund, or deposit, though it be mingled with other money, the beneficiary may enforce the trust. (*Newport* v. *Hatton,* 195 Cal. 132, 150 [231 P. 987].)"

In the instant case, the evidence produced to establish the trust in the money kept by decedent in his safe deposit box mingled with his own funds, is clear and convincing instead of being weak and unsatisfactory, as contended by appellant, and also that appellant Minnie Minor, individually and as administratrix, holds the stated sum of money as trustee for the use and benefit of respondent. The record is replete with testimony of the many declarations made by Mr. Minor during his lifetime that he had placed respondent's money in his safe deposit box subject to her demand and that he had plenty of money belonging to her.

Appellant also urges that the evidence is insufficient to sustain the finding that appellant Minnie Minor holds as *trustee* for the use and benefit of respondent, the sum of $11,467.90 *on the second cause of action,* because a voluntary trust is an obligation arising out of a personal confidence reposed in, and voluntarily accepted by, one for the benefit of another (sec. 2216, Civ. Code), and since the second cause of action does not allege such relationship of trust and confidence, the court should have sustained appellant administratrix' objection under 1880 of the Code of Civil Procedure to respondent's testimony as to said second cause of action.

The complaint in a suit to enforce an alleged trust should set forth the facts which are essential to the plaintiff's cause of action. Since the trust herein may be denominated a voluntary trust—"an obligation arising out of a personal confidence reposed in, and voluntarily accepted by, one for the benefit of another" (sec. 2216, Civ. Code), it would appear that the allegation of trust and confidence should have been incorporated in the second cause of action. Because of such imperfect pleading, appellant's objection to the admission of

respondent's testimony, as to that particular cause of action, should have been sustained.

However, this error is immaterial in so far as the judgment herein is concerned, because as stated in 21 Cal.Jur. 66, section 40: "One good count in a complaint is sufficient to sustain a judgment (*Lucas* v. *San Francisco*, 28 Cal. 591), and upon appeal the judgment will be presumed to be based upon that count." Again, in 14 Cal.Jur. 990, section 69, it is said: "Since there is but one form of civil action under the code the court may grant any relief embraced within the issues. The fact that a party has misconceived the relief to which he is entitled does not alone justify a total denial of relief, but a plaintiff may recover if his complaint states *any cause of action* entitling him to any relief, either at law or in equity." See, also, *Estrin* v. *Superior Court*, 14 Cal.2d 670, 676 [96 P.2d 340].

Where a complaint contains several causes of action, one of which is sufficient to sustain the judgment, the judgment will not be reversed even though the other counts are defective. (*Martin* v. *Los Angeles Turf Club, Inc.*, 39 Cal. App.2d 338, 340 [103 P.2d 188]; *Hall* v. *Dekker*, 45 Cal.App. 2d 783, 787 [115 P.2d 15].)

In passing, it should be noted that an action to enforce a trust against the personal representative of a deceased trustee is not founded upon a claim or demand against the estate within the meaning of subdivision 3, section 1880, of the Code of Civil Procedure, disqualifying a claimant or assignor from testifying against the representative as to any matter of fact occurring before decedent's death. (*Humes* v. *Humes*, 56 Cal.App.2d 126, 132 [133 P.2d 39], and cases therein cited.)

Because of the conclusions reached herein, it is not deemed necessary to discuss other points raised by appellant.

The purported appeal from the order denying appellant's motion for a new trial is dismissed.

The judgment appealed from is affirmed.

Doran, J., and White, J., concurred.

A petition for a rehearing was denied October 26, 1943, and appellant's petition for a hearing by the Supreme Court was denied November 22, 1943.