69 Cal.App.2d Supp. 805 (1945)
FRANK STILLER, Respondent,
v.
BETTY ROGERS et al., Defendants; BERTRAM S. HARRIS, Appellant.
California Court of Appeals. 
May 29, 1945.
 Bertram S. Harris, in pro per., and Joseph Duchowny for Appellant.
 Paul G. McIver for Respondent.
 KINCAID, J.
 The real question before us for determination is whether the evidence supports the court's findings that of the $200 received by the defendant lawyer from the sheriff, on order of Betty Rogers, $149 was money stolen from plaintiff by her and that the defendant knew or should have known that such money was so stolen. The fact that she did steal $918 from him is not questioned here, and the evidence is ample to show it.
 [1] Viewing the evidence, as we must, most favorably in support of the judgment, the record discloses facts readily sufficient to warrant the trial court in finding that, of the $501 [69 Cal.App.2d Supp. 807] found on the person of Betty Rogers at her arrest and deposited with the sheriff under a "Sheriff's hold order," all but $51 thereof belonged to plaintiff and had been stolen from him by her. The $918 in currency so stolen from plaintiff was mostly in $50 bills and $450 of the money found on the person of Miss Rogers was in the form of nine $50 bills, the balance of $51 being in small currency. After its deposit with the sheriff, it had been turned over to the county treasurer as depositary and there commingled with general funds. The evidence further shows that such money was booked on September 29 and, on October 19, after the preliminary hearing of Miss Rogers, the defendant Harris was retained, received a written order upon the sheriff to pay him $200 of the deposited moneys as attorney fees, and upon presentation was informed by the sheriff that such moneys had a "hold" upon them. After some delay and at such defendant's insistence, the sheriff delivered the $200 to defendant from such deposited funds.
 [2a] The appealing defendant is an attorney at law. In accepting employment to represent Betty Rogers, he must have known that she was charged with the theft of $918 in currency from the plaintiff and that evidence sufficient to bind her over to the superior court for trial on such charge had been adduced at the preliminary hearing. He knew from both her and the sheriff that a considerable sum had been found on her person at her arrest and had been impounded with a "hold order" thereon.
 These facts would seem to bring the defendant within the provisions of section 19, Civil Code, which reads: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact."
 Such facts would seem to deprive the defendant of the benefit of receiving the assignment of the currency as a negotiable instrument under the provisions of section 1758, Civil Code, as being one who paid value therefor in good faith, without notice of the theft of such money.
 [3] While United States treasury notes are negotiable instruments of the highest character (10 C.J.S. 428, par. 23), when the defendant Harris received and presented the order from his client, under which he now claims, such treasury notes had disappeared as such by having been commingled [69 Cal.App.2d Supp. 808] with the county's general funds. The order amounted only to an assignment of the interest, if any, of Miss Rogers in part of a fund under the control of the sheriff. It would appear, however, that the rules by which priority as between an assignee and a third party claiming the fund assigned is to be determined, are the same as those affecting the right of a holder of a negotiable instrument. (First Nat. Bank v. Perris Irr. Dist. (1895), 107 Cal. 55, 64 [40 P. 45]; Mohr v. Byrne (1901), 135 Cal. 87, 90 [67 P. 11]; Weiner v. Roof (1937), 10 Cal.2d 450, 452 [74 P.2d 736].) The rights of the defendant Harris as an assignee of such fund as against the claim of the plaintiff herein as the legal owner thereof may properly be tested in the light of the law applicable to a claim by such defendant that he is a holder in due course of a negotiable instrument.
 [4] As to negotiable instruments, it is the general rule that a transferee, purchaser or assignee, where there is nothing about the circumstances attending the negotiation to excite suspicion, is not called on to make inquiry in order to avert the imputation of bad faith. [5] Generally mere knowledge of facts sufficient to put a prudent man on inquiry, or mere suspicion of a defect, does not disqualify a purchaser from becoming a holder in due course unless he is guilty of bad faith, but they may evidence bad faith. (10 C.J.S. 817, 818, par. 324.') "A purchaser, however, cannot shut his eyes to the surrounding circumstances, and, where the circumstances are so cogent and obvious that to remain passive would constitute bad faith, or are such as to justify the conclusion that the failure to make inquiry arose from a suspicion that inquiry would disclose a vice or defect in the instrument or transaction, such purchaser is charged with knowledge. Intentional ignorance, such as a willful evasion of knowledge of the facts, constitutes bad faith disqualifying the purchaser from becoming a holder in due course. Where circumstances which put him on inquiry are within his knowledge, he is chargeable with knowledge of all facts which an inquiry would have revealed." (10 C.J.S. 820, par. 324.) (See, also, 8 C.J. 501.) That these general rules are followed in California is shown by the following cases: Imperial Gypsum & Oil Corp. v. Chaplin (1935), 4 Cal.App.2d 109, 112 [40 P.2d 596]; Barthelmess v. Cavalier (1934), 2 Cal.App.2d 477, 487 [38 P.2d 484]; Siebenhauer v. Bank of Cal. Nat. Assn. (1930), 211 Cal. 239, 241 [294 P. 1062]; Smith v. Armstrong (1927), 85 Cal.App. 624, 631 [260 P. 347]. [69 Cal.App.2d Supp. 809]
 [6] It has also been held that a purchaser is not charged with the duty to make inquiry by the fact alone that he had knowledge of the want of honesty in business matters of the party from whom he received the instrument. (Smith v. Armstrong, supra, p. 631.) But with other circumstances it may show bad faith. "... [I]t has been held that a purchaser who acquired a note without making an investigation, notwithstanding he knew that the seller was hard pressed and was an embezzler laboring under an expectation of a criminal prosecution, was chargeable with notice that the seller held the note as trustee." (10 C.J.S. 837, par. 335, citing Bergheim v. McRae, 190 Minn. 571 [252 N.W. 833].)
 [2b] The trial court was warranted by the evidence in concluding that the defendant either knew or should have known that at least part of the moneys so received by him were stolen funds, and that such knowledge disqualified the defendant from becoming a holder in due course.
 [7] A cause of action based upon the common count of money had and received is proper under the facts here. "An action for money had and received 'may be successfully maintained even though not founded upon allegations showing an express privity of contract between the parties. This is so upon the theory that one of the parties has received money due and owing under the circumstances which make it his duty to surrender the money to the rightful owner, the law will imply the promise to do so, and thereby create the requisite contractual privity.'" (Coombs v. Minor (1943), 60 Cal.App.2d 645, 649 [141 P.2d 491]; see 17 Cal.Jur. 602, par. 1, p. 610, par. 7.)
 The court's findings, being amply supported by the evidence, the judgment is hereby affirmed, respondent to recover his costs of appeal.
 Shaw, P. J., and Bishop, J., concurred.